# In the
# United States Court of Appeals
## For the Seventh Circuit

————————

No. 03-3252

METHODE ELECTRONICS, INCORPORATED,

*Plaintiff-Appellant*,

v.

ADAM TECHNOLOGIES, INCORPORATED
and VINCENT DEVITO,

*Defendants-Appellees.*

————————

Appeal from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 03 C 2971—**John F. Grady**, *Judge.*

————————

ARGUED APRIL 8, 2004—DECIDED JUNE 14, 2004

————————

Before KANNE, EVANS, and WILLIAMS, *Circuit Judges.*

EVANS, *Circuit Judge.* The parties before us, who are in the electronic connector business, have been involved in a number of disputes in Delaware state courts and one in the United States District Court for the District of New Jersey. The latter resulted in a settlement and an exclusive licensing agreement. When Methode Electronics, Incorporated sought a finding that the licensing agreement was breached, it chose not to return to court in New Jersey, but rather it came to the Northern District of Illinois seeking a

temporary restraining order. In its verified complaint, signed by attorney Terrence P. Canade and verified by James F. McQuillen, executive vice-president of Methode, Methode alleged that venue was proper in the Northern District of Illinois. In the eyes of the district judge, the Honorable John F. Grady, that turned out not to be true. Sanctions were imposed against both attorney Canade and Methode. Methode appeals, contending that the sanctions were improperly imposed.[1]

As to the underlying lawsuit, it is enough to say that from 1987 to 1993 Methode owned all the stock of Adam Technologies, Inc. (Adam Tech), a New Jersey corporation with its principal place of business in New Jersey. Under the settlement in the federal district court in New Jersey, Methode was to sell to Vincent DeVito all of its shares in Adam Tech as well as the Adam Tech trade name and trademarks and a large amount of inventory. Under a separate license agreement, Methode obtained an exclusive right to market the remaining Adam Tech products it had on hand; in addition, Adam Tech and DeVito would do nothing to interfere with Methode's exclusive license. The claim in the present lawsuit is that less than a day after the licensing agreement was signed, Adam Tech and DeVito began to undermine Methode's rights by issuing a press release to Methode's customers which announced that "Adam Tech will be accepting orders and opportunities for more than 5,000,000 connectors stocked at its Union, NJ facility." It was in response to this press release that Methode filed the present case. However, as Adam Tech and DeVito point out, the settlement agreement also expressly provided that "nothing shall prevent Mr. DeVito or his designee, during the period of the License Agreement, from selling inventory that Methode delivers pursuant to this Settlement Agreement."

---

[1] Attorney Canade has not appealed from the sanction order.

The allegation in the verified complaint which gives rise to the order for sanctions is found in paragraph 19, which states:

> Adam Tech and/or Mr. DeVito issued the Press Release to Methode distributors and customers throughout North America, including distributors and customers in this District.

The verified complaint was filed on May 2, 2003, and 3 days later, on the 5th, Harold Hoffman, the attorney for Adam Tech and DeVito, sent Canade a letter pursuant to Rule 11 advising him that Illinois was not an appropriate forum for the action and that Adam Tech's conduct as alleged in the complaint was permissible under the settlement agreement. Hoffman stated that if Methode proceeded with this case in Illinois, he would seek sanctions under Rule 11 of the Federal Rules of Civil Procedure. Despite the letter, McQuillen advised Canade to proceed with Methode's motion for a temporary restraining order. Canade filed the motion and set it for hearing on May 7. Adam Tech and DeVito challenged the allegation that venue was proper in the Northern District of Illinois and disclosed the portion of the settlement agreement that authorized DeVito to sell inventory delivered by Methode during the exclusivity period of the license agreement.

Discussing the latter fact during the hearing, Judge Grady said that Methode had omitted "relevant information that the court should have been given." The judge was, however, more interested in, and annoyed by, the venue allegations. He was concerned with the venue allegations because "if [the court] lacked venue, [it] would in no event grant a temporary restraining order. It would instead . . . grant defendants' request that the case be transferred to the District of New Jersey, where venue was clearly proper and where the court was already familiar with the parties and the background of their disputes."

On behalf of Adam Tech and DeVito, attorney Hoffman orally moved for sanctions, requesting that they be awarded costs incurred as a result of being improperly haled into court in Illinois. A briefing schedule was set on the motion.

The next day, the judge entered an order stating that he would delay transferring the case to New Jersey until he had ruled on the motion for sanctions. He then issued a rule "to show cause why [Canade and Methode] should not be held to have violated Rule 11(b)(3) in regard to paragraph 19" of the complaint. A briefing schedule was set on the rule. On May 9, Methode filed a notice of voluntary dismissal of the case without prejudice pursuant to Fed. R. Civ. P. 41(a).

The rule to show cause remained pending. Discovery confirmed that the venue allegation lacked an evidentiary basis. The press release was not sent directly to entities in the Northern District of Illinois. It only reached Illinois indirectly. Two of Methode's customers, each of which maintain branches in the Northern District, received copies of the press release outside of Illinois, and they were the ones who forwarded copies to those branch offices in Illinois. After considerable examination of the issue, the judge issued an order saying that the venue allegation not only lacked evidentiary support but was intentionally false and that Methode's conduct in advancing it was "intentionally deceptive." He found that neither Adam Tech nor DeVito sent the press release into the district. The order further stated that "this was not a question of mere negligence," but rather an effort to deceive the court. Pursuant to Rule 11(c)(2), the judge imposed sanctions against Methode: a fine of $10,000 payable to the court and half the defendants' attorney fees and expenses, which would be determined later. The same sanction was assessed against attorney Canade. The attorney fees were later stipulated to be $45,000.

In its appeal, Methode contends that Judge Grady erred in awarding attorney fees, costs, and a fine as a sanction because Adam Tech and DeVito did not comply with Rule 11's safe-harbor provisions. Methode also contends that it was error to award sanctions because there is no evidence in the record to support the holding.

We review the grant of sanctions with deference because of the familiarity of the trial court with the relevant proceedings. The imposition of sanctions, under either Rule 11 or the court's inherent power, is reviewed for an abuse of discretion. *Jimenez v. Madison Area Tech. Coll.*, 321 F.3d 652 (7th Cir. 2003).

We reject the claim that there was no evidence in the record to support the holding that Paragraph 19 was false. The record is clear that almost as the verified complaint was being filed, McQuillen told Canade that he did not know whether the press release had been sent to Illinois. Less than 90 minutes before the complaint was filed, Canade sent an e-mail to McQuillen, attaching a draft of the complaint and requesting that McQuillen provide anecdotes to support the allegations in paragraph 19. No anecdotes were provided, supporting an inference that none were available. At his deposition, McQuillen testified that when he signed the verified complaint he did not know whether anyone in the Northern District of Illinois had been sent a copy of the press release:

> Q. Now, sir, on May 2nd before you signed the Verified Complaint at around 3:00 p.m., or somewhere between 3:00 and 4:00 p.m., did you know if the press release had been sent to branch offices in Illinois?
>
> A. No.

Methode's other claim is that the district court did not have authority to award attorney fees and expenses on a rule to show cause under Rule 11. Related is the claim that Adam Tech and DeVito did not file a motion as Rule 11

requires, nor did they comply with Rule 11(c)(1)(A)—that is, provide a 21-day "safe harbor." Methode is partly right.

Rule 11 requires that a motion "shall be made separately from other motions or requests and shall describe the specific conduct alleged to violate" the rule. The motion must be served on the opposing party but "shall not be filed with or presented to the court unless within 21 days after service of the motion (or such other period as the court may prescribe), the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected." Alternatively, the court may, on its own initiative, "enter an order describing the specific conduct" that appears to violate the rule and "directing an attorney, law firm, or party to show cause" why it has not violated the rule.

It can be argued that Adam Tech and DeVito did not file a separate motion, although their attorney moved for sanctions at the close of the hearing on the request for a temporary restraining order. Methode emphasizes that, in any case, Adam Tech and DeVito did not comply with the safe-harbor provisions of Rule 11. Therefore, the argument goes, the only basis for the award of sanctions is a rule to show cause on the court's own initiative. Methode points out that the problem with the order is that Rule 11 does not authorize the award of attorney fees when the court is acting on its own motion. The rule provides that the sanction may consist of

> directives of a nonmonetary nature, an order to pay a penalty into court, or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation.

We agree with Methode that, if the sanction is imposed on the court's own motion, attorney fees cannot be awarded.

We have previously ruled that Rule 11(c)(2) "allows the imposition of attorneys' fees against a party only if the sanctions were initiated by motion" and that it would be an abuse of discretion for a judge to impose sanctions *sua sponte*, pursuant to Rule 11(c)(1)(B). *Divane v. Krull Elec. Co.*, 200 F.3d 1020, 1030 (7th Cir. 1999).

But the record in this case is open to interpretation. We could conclude that Adam Tech and DeVito were in substantial compliance with Rule 11; or we could find that it was impossible for them to comply with Rule 11; or we could determine that Methode waived its right to a 21-day safe harbor.

For example, it is relatively clear that Adam Tech and DeVito did what they could to comply with Rule 11. They sent a "heads-up" letter to Methode. This is exactly what the commentary to the rule suggests a party should do: "In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion." When Methode proceeded with the hearing, it, in effect, rejected the warning. And at that point, Adam Tech and DeVito had no opportunity to file their motion and were prevented by the speed of events from granting a 21-day period to withdraw the allegation. They argue, with some basis, that what Methode did when it proceeded with the hearing was to waive the right to the 21-day period.

Then, when the judge chose to proceed on a rule to show cause, the case proceeded on that basis. Under Rule 11 there is no problem with proceeding on the judge's own initiative by a rule to show cause. As we said, the problem is that, under the rule, if he proceeds without a motion from the parties, a judge is without authority to award attorney fees. Even though there may be a basis in this case for finding substantial compliance with the rule, or that

Methode waived its rights to the 21-day safe-harbor provision, we will not decide those issues. Rather, we are convinced that this was a proper case for the exercise of the court's inherent power to control the proceedings before it. And, of course, we can affirm "a grant of sanctions on any basis supported by the record and the law." *Divane*, 200 F.3d at 1026.

Rule 11 has not robbed the district courts of their inherent power to impose sanctions for abuse of the judicial system. In *Chambers v. NASCO, Inc.*, 501 U.S. 32, 49 (1991), the Court was quite clear that "the inherent power of a court can be invoked even if procedural rules exist which sanction the same conduct." The Court stated that there was "no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanction for . . . bad-faith conduct . . . ." At 46. Even before *Chambers* we recognized the inherent power of the district courts. *See G. Heileman Brewing Co. v. Joseph Oat Corp.*, 871 F.2d 648 (7th Cir. 1989) (en banc). We have, however, continued to make clear that there is a "need to be cautious when resorting to inherent powers to justify an action, particularly when the matter is governed by other procedural rules . . . ." *Kovilic Constr. Co. v. Missbrenner*, 106 F.3d 768, 772-73 (7th Cir. 1997).

The case before us today illustrates the wisdom of retaining the inherent power of the courts. As in many cases involving a request for preliminary relief, blind adherence to the procedures in Rule 11 is not possible. Events often move too fast to allow strict compliance with the rule. To repeat, Adam Tech and DeVito had sent a letter warning of their intention to move for sanctions if the case remained in Illinois. Methode decided to proceed with its motion for a temporary restraining order by scheduling a hearing 2 days after the letter was sent. The case was filed and voluntarily dismissed, all within 7 days. Short as it was, that time period was long enough for Adam Tech and DeVito to have

to appear at a hearing in Illinois, thus incurring the attorney fees and costs at issue here. The judge certainly acted wisely in trying to sort out what was going on.

In order to sanction a party under its inherent power, a court must provide notice of its intention to impose sanctions and give the party an opportunity to respond. Sanctions can then be imposed if the court finds that the party "acted in bad faith, vexatiously, wantonly, or for oppressive reasons . . . ." *Chambers*, 501 U.S. at 33. Judge Grady provided notice and gave Methode an opportunity to respond. He also carefully considered the conduct, examining affidavits, briefs, and McQuillen's deposition testimony. He then found that when McQuillen signed the complaint, he did not know whether any copies of the press release had been sent into the Northern District. He found not only that Methode's venue allegations were false, but that Methode's conduct in advancing them was intentionally deceptive. He recognized that Methode had filed a verified complaint with the explicit allegation that venue was proper in Illinois because a less definite allegation (acknowledging that while it did not have evidentiary support for an allegation that venue was proper in Illinois but that it hoped to develop evidence regarding venue during discovery) would have meant that the temporary restraining order would not have been issued. He said, "[T]his was not a question of mere negligence. It was an effort to deceive the court as to the existence of venue, so that Methode could litigate the case in a forum that was convenient to it, however inconvenient to defendants, and possibly even obtain preliminary injunctive relief." Judge Grady acted well within his authority in ordering a sanction of attorney fees and costs, as well as the fine payable to the court. The order imposing sanctions is AFFIRMED.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*