In the

# United States Court of Appeals

## For the Seventh Circuit

Nos. 08-2907 & 09-1044

MICHAEL W. MACH,

*Plaintiff-Appellant,*

*v.*

WILL COUNTY SHERIFF,

*Defendant-Appellee.*

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
No. 06 C 3378—**James B. Zagel**, *Judge.*

ARGUED MAY 28, 2009—DECIDED SEPTEMBER 1, 2009

Before BAUER, FLAUM, and KANNE, *Circuit Judges.*

KANNE, *Circuit Judge.* Michael Mach, a law enforcement officer in Will County, Illinois, claimed that the Will County Sheriff discriminated against him in violation of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a)(1). The district court found no evidence of discrimination and granted summary judgment in the Sheriff's favor, a decision Mach now appeals. The real dispute at oral argument, however, focused on

the district court's order that Mach pay some of the Sheriff's legal fees because Mach litigated part of this case in bad faith. We find no error in either decision below.

## I. BACKGROUND

Michael Mach has served as a deputy sheriff with the Will County Sheriff's Department since 1988. He spent the bulk of his career in the traffic division, where his duties included enforcing traffic regulations and investigating accidents. After years of satisfactory performance, the following series of events in late 2003 and early 2004 earned him warnings, a suspension, and ultimately a transfer to the patrol division.

In September 2003, Mach's supervisor, Director Raymond Horwath, issued a memorandum to all traffic deputies[1] stating that, due to budget concerns, they may be temporarily assigned to the patrol division. None of the traffic deputies were particularly happy about this prospect, but Horwath's memo sought their cooperation in making this short-term solution as palatable as possible.

That month, Mach was assigned to three consecutive days in the patrol division. After his third shift on September 11, he deposited some of his traffic equipment outside of Horwath's door, accompanied by a note stating that he no longer needed the equipment because he had been transferred indefinitely to patrol. Mach also re-

---

[1] At this time, there were six deputy sheriffs assigned to the traffic division.

quested that he be removed from the traffic division's "call-out" list while assigned to patrol.

An "exasperated" Horwath believed that Mach had "overstepped his bounds" by dumping his gear at Horwath's door without speaking to him directly. Horwath conferred with his superiors, Deputy Chief John Moss and Chief Deputy Patrick Maher, who agreed that Mach should be transferred to patrol. Mach grieved the proposed transfer, and after a subsequent meeting, Will County Sheriff Paul Kaupas decided to give Mach a second chance. Over objections from Horwath, Moss, and Maher, Sheriff Kaupas transferred Mach back to traffic.

Mach did not take advantage of his reprieve. Within months, his performance began a steady decline. On February 11, 2004, Horwath investigated Mach and issued a written reprimand for actions occurring in the preceding month. Horwath specifically cited Mach's failure to adhere to directives and his unsatisfactory performance.

Just over one week later, on February 19, Horwath instructed Mach to complete and return a complaint form regarding speeding vehicles by February 25. Mach failed to follow the instruction, declined to take advantage of a one-day extension granted by Horwath, and finally landed in an administrative interview with his union representative and Horwath. Following a pre-disciplinary hearing on March 25, Horwath recommended that Mach be suspended without pay for one day. Horwath also warned Mach that any further discipline could result in a transfer out of traffic.

But Mach's performance did not improve, particularly with respect to his traffic enforcement duties. Mach consistently issued warnings instead of citations to drivers exceeding the speed limit by more than twenty miles per hour. Even Sheriff Kaupas cautioned Mach that his practices could lead to a transfer after Mach issued a warning to a driver speeding ninety-three miles per hour in a fifty-five-miles-per-hour zone. Deputy Chief Moss and Chief Deputy Maher warned Mach that he needed to cite more motorists for driving under the influence, but Mach failed to do so. Mach neglected an accident investigation for over two months, and Horwath had to reassign it to another deputy. Other officers commented on Mach's "passive aggressive behavior" and his "reluctance to follow directions." Mach's performance grade for 2003 was a paltry 2.86 out of 5.00, the lowest of the division. The officer with the next lowest score, a 3.28, was also transferred from traffic in 2004.

As a result of these deficiencies, Horwath recommended on August 31, 2004, that Deputy Chief Moss transfer Mach to patrol. Moss agreed and informed Mach the next day; Sheriff Kaupas made the final decision to permanently transfer Mach. Mach was forty-seven years old at the time of his transfer. Charles Albin, age thirty-nine, temporarily filled his shift, and Michael Johnson, age forty-seven, permanently filled the position.

Mach filed this lawsuit on June 21, 2006, alleging that Sheriff Kaupas violated the ADEA, 29 U.S.C. § 623(a)(1). Mach stated six distinct grounds for his discrimination

claims, including his transfer to a less prestigious position in the patrol division.[2] Sheriff Kaupas moved for summary judgment, attacking all six of Mach's arguments. In his response brief, Mach abandoned five of the six arguments, leaving only the claim based on his transfer.

The district court granted the Sheriff's motion on July 1, 2008, finding that Mach's transfer was based on his poor job performance, not his age. The court also held that Mach's transfer was not a materially adverse change in employment because he produced no evidence that the new position was objectively less prestigious or accompanied by lesser pay, benefits, or opportunities for career advancement.

Following summary judgment, the district court granted in part the Sheriff's Motion for Fees and Costs. The court found that Mach had litigated in bad faith by abandoning five of his six allegations of age discrimination only after the Sheriff had filed his opening summary judgment brief. The court noted that although Mach had not litigated the entire case in bad faith, he caused the Sheriff to expend unneeded time, effort, and cost in briefing all six arguments when Mach knew, based on the discovery, that those arguments were "worthless." The court therefore required Mach to pay five-sixths

---

[2] Mach's other alleged acts of discrimination were (1) denying him the opportunity to work overtime, (2) denying him travel time, (3) creating a hostile work environment, (4) manipulating his work schedule, and (5) denying him the opportunity to teach training courses.

(eighty-three percent) of the Sheriff's fees incurred in preparing the summary judgment brief, as well as certain associated costs.

## II. ANALYSIS

Mach now challenges both of the district court's rulings. First, he claims that he produced sufficient evidence to survive summary judgment. Second, he argues that the court abused its discretion by requiring him to pay a portion of the Sheriff's fees and costs. We reject both of his arguments.

### A. Summary Judgment

We review *de novo* the district court's grant of summary judgment, and we examine the record in the light most favorable to Mach, the non-moving party. *Faas v. Sears, Roebuck & Co.*, 532 F.3d 633, 640 (7th Cir. 2008). Summary judgment is appropriate where the record reveals that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In both his reply brief and at oral argument, Mach focused almost exclusively on the district court's imposition of fees and costs, ignoring his appeal of the summary judgment decision. We see good reason for this— the record does not support Mach's ADEA claim.

The ADEA prohibits an employer from discriminating against an employee because of his age. 29 U.S.C. § 623(a)(1); *Faas*, 532 F.3d at 641. The Supreme Court

recently held that an ADEA plaintiff must demonstrate that his age was the "but-for" cause of the challenged employment action. *Gross v. FBL Fin. Servs., Inc.*, 129 S. Ct. 2343, 2352 (2009). Mach argued his claim solely based on the direct method of proof,[3] and we limit our discussion accordingly.

The direct method required Mach to produce direct or circumstantial evidence that the Sheriff transferred him because of his age. *See Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 490 (7th Cir. 2007); *see also Sylvester v. SOS Children's Vills. Ill., Inc.*, 453 F.3d 900, 902-03 (7th Cir. 2006) (explaining the difference between direct and indirect methods of proof). Direct evidence typically requires an admission of discriminatory animus, but a plaintiff may also produce circumstantial evidence that establishes the employer's discriminatory motive through a longer chain of inferences. *Atanus v. Perry*, 520 F.3d 662, 671 (7th Cir. 2008); *see also Nagle v. Vill. of Calumet Park*, 554 F.3d 1106, 1114-15 (7th Cir. 2009); *Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 794 (7th Cir. 2005) (referring to the ubiquitous "convincing mosaic" of circumstantial evidence).

The record in this case is devoid of facts from which a jury could infer that the Sheriff transferred Mach because of his age. The stated reason for Mach's transfer—his poor job performance—was well known and thoroughly documented. Mach engaged in what was perceived by

---

[3] An ADEA plaintiff may also prove his claim under the indirect method, *see Faas*, 532 F.3d at 641, but Mach did not make this argument.

superiors as an act of insubordination, and he failed to improve his work after receiving a second chance, repeated warnings, and a one-day suspension. Mach was the lowest-rated traffic deputy for 2003, and the Sheriff transferred the officer with the next-lowest rating as well. Mach did not adequately refute any of these performance issues nor suggest that the discipline itself, other than the challenged transfer, was age-related.

In fact, Mach pointed to *no* circumstantial evidence of discriminatory animus, save for one lone comment purportedly made by Horwath. According to Mach, Horwath told him months before August 2004 that he should be transferred to patrol because he was nearing retirement. An isolated comment or "stray remark" is typically insufficient to create an inference of discrimination, but it may suffice if it (1) was made by the decision-maker, (2) around the time of the decision, and (3) referred to the challenged employment action. *Hemsworth*, 476 F.3d at 491; *Merillat v. Metal Spinners, Inc.*, 470 F.3d 685, 694 (7th Cir. 2006).

We need not move past the first factor—that Horwath was not the decision-maker dooms Mach's claim. Mach does not dispute that Sheriff Kaupas made the final decision to transfer him to patrol, but he argues that Horwath unduly influenced the Sheriff's determination. In some instances, we may impute the prejudices of a subordinate or coequal employee to the formal decision-maker. *See Lust v. Sealy, Inc.*, 383 F.3d 580, 584-85 (7th Cir. 2004); *see also Shager v. Upjohn Co.*, 913 F.2d 398, 405 (7th Cir. 1990). This is appropriate where the employee

was "able to influence the decision," *Wallace v. SMC Pneumatics, Inc.*, 103 F.3d 1394, 1400 (7th Cir. 1997), "tainted the decision maker's judgment," *Hoffman v. MCA, Inc.*, 144 F.3d 1117, 1122 (7th Cir. 1998), or was "able to manipulate the decisionmaking process," *Willis v. Marion County Auditor's Office*, 118 F.3d 542, 547 (7th Cir. 1997).

We need not explore the outer contours of this so-called "cat's paw" theory because to succeed, Mach must at least show that Horwath had *some* influence over the employment decision. *See Brewer v. Bd. of Trs. of the Univ. of Ill.*, 479 F.3d 908, 917-19 (7th Cir. 2007) (analyzing the influence by a non-decision-maker over a decision-maker required to impute the former's discriminatory animus to the latter). Mach is unable to do so.

Sheriff Kaupas made an untainted, independent decision to transfer Mach. Horwath was not the only superior officer troubled by Mach's job performance. Deputy Chief Moss and Chief Deputy Maher each voiced his disapproval to the Sheriff and recommended that Mach be transferred. The Sheriff himself had previously warned Mach that further incidents could result in transfer. Most convincingly, Mach's "cat's paw" argument is belied by the Sheriff's prior rejection of recommendations by Horwath, Moss, and Maher to transfer Mach following his insubordinate incident in September 2003. Sheriff Kaupas, far from blindly submitting to Horwath's allegedly discriminatory desire, independently granted Mach a second chance. The record is clear that the Sheriff then made an independent decision to transfer Mach in fall 2004.

Without a causal relation between Horwath's state-
ment and the Sheriff's decision, this single piece of cir-
cumstantial evidence supporting Mach's case becomes
irrelevant. *See Lust*, 383 F.3d at 584. Mach has produced
no additional evidence that the Sheriff transferred
Mach because of his age, and his ADEA claim must fail.[4]
The evidence indicated that the Sheriff honestly believed
that Mach was performing his job poorly, and this
belief precipitated Mach's transfer. We agree with the
district court that summary judgment was appropriate.

### B.  Award of Fees and Costs

We now turn to the district court's fees and costs order,
which was the focus in Mach's reply brief and at oral
argument. We review the court's decision to award fees
for an abuse of discretion. *Aaron v. Mahl*, 550 F.3d 659,
667 (7th Cir. 2008).

The district court determined that Mach litigated in
bad faith by retaining five of the six grounds for his

---

[4] The district court alternatively held that Mach's lateral
transfer was not a "materially adverse employment action"
because he did not demonstrate that his new position in
patrol was objectively less prestigious or that it required a
reduction in pay, benefits, opportunity for advancement, or
the use of lesser skill. *See Mach v. Will County Sheriff*, No. 06 C
3378, 2008 WL 2692018, at *3 (N.D. Ill. July 1, 2008). Because
we are convinced that summary judgment was appropriate
given the lack of evidence of the Sheriff's discriminatory
motive, we need not address this issue.

discrimination suit until summary judgment, despite knowing after discovery that they were meritless. Specifically, the court held:

> I think timing is important in these matters. . . . The process of discovery, which leads to abandonment, is usually good faith litigation, and this case seems to be no exception. Where I do find enough bad faith to justify fee shifting, I find it only in one circumstance. Plaintiff knew that a summary judgment motion was coming. On January 9, 2008, I set a motion schedule requiring service of a summary judgment motion by February 29, 2008. The summary judgment motion briefed and argued all six acts of age discrimination. It inflicted unnecessary costs upon Defendant. One litigates in bad faith when one leaves on the table those claims which it knows are worthless, at least if litigation continues over those claims. Based on the papers in this case, it was clear to Plaintiff's counsel, well before the defense served its motion, that five of the alleged acts of discrimination were non-starters.

Mach's main objection to the court's order is that it essentially established a new rule requiring a litigant to abandon a theory of recovery before summary judgment or face sanctions. He avers that the court's approach would cause plaintiffs to half-heartedly argue doomed claims rather than drop them and risk sanctions. We do not read the district court's ruling so broadly.

The ADEA incorporates by reference the fee-shifting provision of the Fair Labor Standards Act (FLSA). *See* 29

U.S.C. § 626(b). The FLSA's fee-shifting provision refers only to a prevailing plaintiff, *see id.* § 216(b), and says nothing of a prevailing defendant. We have thus held that the ADEA's remedial scheme does not preclude application of the common law rule that a prevailing defendant may obtain attorneys' fees if the plaintiff litigated in bad faith. *EEOC v. O & G Spring & Wire Forms Specialty Co.*, 38 F.3d 872, 883 (7th Cir. 1994). This exception to the typical "American rule," under which each party bears his own litigation expenses, applies where "a party has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons.'" *Chambers v. NASCO, Inc.*, 501 U.S. 32, 45-46 (1991) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 258-59 (1975)); *see also Stive v. United States*, 366 F.3d 520, 521 (7th Cir. 2004).

Exactly what constitutes bad faith has been the subject of some uncertainty. Courts have used phrases such as harassment, unnecessary delay, needless increase in the cost of litigation, willful disobedience, and recklessly making a frivolous claim. *See Stive*, 366 F.3d at 521-22 (collecting and discussing cases). We have also noted, when analyzing the meaning of "unreasonably and vexatiously" in the similar context of 28 U.S.C. § 1927, that the term "bad faith" has both a subjective and objective meaning, and we often treat reckless and intentional conduct equally. *See Kotsilieris v. Chalmers*, 966 F.2d 1181, 1184-85 (7th Cir. 1992); *In re TCI, Ltd.*, 769 F.2d 441, 445 (7th Cir. 1985). Furthermore, bad faith may occur beyond the filing of the case and "'may be found, not only in the actions that led to the lawsuit, but also in the conduct of the litigation.'" *Roadway Express, Inc. v. Piper*, 447

U.S. 752, 766 (1980) (quoting *Hall v. Cole*, 412 U.S. 1, 15 (1973)).

Under the facts of this case, the district court did not abuse its discretion in awarding fees to the Sheriff after finding that Mach litigated in bad faith. The court properly acknowledged that the ADEA only permits sanctions if Mach litigated in bad faith, a standard the court characterized as "a high barrier to an award of fees." These statements reveal a cautious and considered deliberation, the result of which was the court's conclusion that Mach had not litigated the entire case in bad faith. But the court expressly determined that Mach *knew* that five of the six bases for his claims were "worthless" and "non-starters." The timing of Mach's abandonment was central to the court's decision. Discovery closed on December 20, 2007. The Sheriff's summary judgment brief was not due until more than two months later, on February 29, 2008. Because Mach permitted litigation to continue after discovery had erased any doubt that his arguments had even a chance of success, he inflicted unnecessary costs upon the Sheriff. The court strictly limited its fee award to those unnecessary expenses.

We emphasize that not every plaintiff who avers multiple grounds for relief, only to subsequently abandon some of them, will be vulnerable to sanctions—even if such abandonment comes during the summary judgment stage. A plaintiff may determine as a matter of strategy that a weak, yet non-frivolous, argument is no longer worth presenting so that he may focus the

court's attention on his more meritorious claims. It is also possible that a party might be so persuaded by an opponent's summary judgment brief that he justifiably abandons a claim. We certainly do not encourage plaintiffs to persist in meritless arguments through summary judgment simply to avoid sanctions; in fact, abandoning unprovable claims generally indicates the *absence* of bad faith. Such practice benefits the parties, the court, and, ultimately, the efficient administration of justice.

But where Mach went wrong is that he pressed all six of his arguments after discovery had long ago revealed that five of the six were "worthless." This is not a case where his claims, although leaking, held some water. If that were so, pursuing them to summary judgment—even facing great odds against their success—would not warrant sanctions. But according to the district court, discovery made clear to Mach that his arguments were losers. We expect that sanctions such as these will be rare. But in this case, we cannot conclude that the district court abused its discretion in determining that Mach's conduct was in bad faith, vexatious, wanton, or harassing.

Mach also argues that the district court's ruling avoids Rule 11 of the Federal Rules of Civil Procedure, which provides a detailed procedure for addressing frivolous litigation. But it is established that Rule 11 "has not robbed the district courts of their inherent power to impose sanctions." *Methode Elecs., Inc. v. Adam Techs., Inc.*, 371 F.3d 923, 927 (7th Cir. 2004) (citing *Chambers*, 501 U.S. at 49). The Supreme Court has made clear that "the inher-

ent power of a court can be invoked even if procedural rules exist which sanction the same conduct." *Chambers*, 501 U.S. at 49.[5] A district court should be cautious when exercising such inherent authority, *id.* at 50; *see also Methode Elecs., Inc.*, 371 F.3d at 927, but it retains that authority nonetheless.

In this case, Mach had notice that he might be subject to sanctions—the Sheriff filed a motion requesting them—and had an opportunity to respond. The court found no evidentiary support for his arguments and no reason for maintaining them through summary judgment. The district court, who was familiar with the relevant proceedings and therefore receives deference, *see Methode Elecs., Inc.*, 371 F.3d at 925, did not circumvent Rule 11 or otherwise abuse its discretion in imposing attorneys' fees.

Finally, the district court did not err by requiring Mach to pay for five-sixths of the fees for preparation of the opening summary judgment brief. Mach avers that each of the six claims did not occupy equal space in the Sheriff's brief, meaning that each one does not justify equal compensation. But an argument's succinctness and brevity does not always mean that it required less work; it may even indicate the opposite. Each of Mach's alleged acts of discrimination required independent discovery, research, and time. The court's resolution

---

[5] The Court in *Chambers* thoroughly analyzed the interplay between various procedural rules and a court's inherent authority to impose sanctions. *See* 501 U.S. at 46-51.

was a reasonable way to allocate the Sheriff's unnecessary fees.


### III. CONCLUSION

Mach presented no evidence that his transfer was based on his age, and the district court properly granted summary judgment against him. Likewise, the district court did not abuse its discretion in awarding attorneys' fees to the Sheriff after finding that Mach litigated part of his lawsuit in bad faith. We AFFIRM.