In the
United States Court of Appeals
For the Seventh Circuit

No. 99-1456

JEFFREY CASH,

Plaintiff-Appellant,

v.

ILLINOIS DIVISION OF MENTAL HEALTH,
d/b/a Warren G. Murray Developmental Center,

Defendant-Appellee.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 97 C 473--Paul E. Riley, Judge.

Argued February 7, 2000--Decided April 7, 2000

Before KANNE, ROVNER, and EVANS, Circuit Judges.

EVANS, Circuit Judge.  Jeffrey Cash sued the
Illinois Division of Mental Health (IDMH) for
sexual harassment under Title VII following a
long stretch in which he was taunted at work
because his co-workers thought him to be a
closeted homosexual. After a bench trial the
court denied the claim, finding that IDMH acted
appropriately, that the harassment was not
pervasive, and that it was not directed at Cash
because of sex. Cash moved for a new trial,
arguing that the district judge erroneously
excluded key evidence, misinterpreted the
evidence that was presented, and overlooked a
theory of the case that would have permitted
recovery. Today we consider Cash's appeal of the
denial of this motion.

In 1988 IDMH hired Cash to work as a nurse's
aid in the Murray Developmental Center, a home
for developmentally disabled people in Centralia,
Illinois. Cash performed ably, and for the first
7 years he voiced no complaints about his work
environment, his employer, or his fellow
employees. Indeed, for a time, the job supported
what looked to be a secure and happy life: Cash
lived in his own home with his wife and children;
he owned a couple of cars; and he even had a
power boat which he used to fish the scenic lakes
of Southern Illinois.

Ironically, it was just such a peaceful fishing expedition that set in motion the events that gave rise to this suit. In the summer of 1995 Cash invited fellow Murray employee, Donny Hodge, for a Saturday's worth of fishing aboard Cash's boat. The two stayed out all day, and upon returning to Hodge's house that night, they agreed to try their luck again on Sunday. Since Cash's wife and kids were visiting their grandparents, Hodge asked Cash if he wanted to stay over and Cash accepted. On Sunday the two enjoyed another day of fishing.

But Hodge is gay and most everyone, it seems, at Murray knew it. Once the fishermen returned to work, rumors started to fly that they were having an affair. Interestingly, the story did not cause the kind of trouble one might expect. Rather than enduring verbal abuse about his alleged homosexuality from insecure, macho male colleagues, Cash began to take flak from a group of female co-workers about his perceived failure to emerge from the closet and embrace his homosexuality.

While this scenario might not fit neatly into an established cannon of bigotry--a pack of women berating a man for not coming out of the closet is a distinctly modern phenomenon--Cash's tormentors made the next year of his life at work rather miserable. They laughed at Cash while simulating fellatio or male masturbation, called him a "he/she" or "the evil one," and bared their breasts and shook them at him while laughing. One woman even rubbed her bare breasts against Cash's arm following a union meeting. Over time, Cash became short-tempered, paranoid, and depressed. He eventually sought psychiatric counseling, which both he and his therapists say stemmed from his stressful working conditions.

As we said, Cash filed suit under Title VII, lost at trial, and then moved for a new trial. In the motion, he argued that the court committed a variety of evidentiary miscues and then erroneously assessed the evidence to settle on factual findings that were not supported by the record. He also asserted that the court overlooked a theory of the case that would have allowed him to recover under Title VII--that he was discriminated against, not for his perceived homosexuality, but because he failed to live up to dominant male stereotypes.

In rejecting these contentions the district court found that Cash did not point to any evidence that would have changed its factual or legal conclusions. The court stated that Cash wanted to present facts not introduced at trial,

that he failed to show that the court erroneously excluded certain testimony and exhibits, and that Cash's stereotype argument constituted an attempt to re-try the case under a theory that was never advanced at trial.

Cash's motion for a new trial was not timely filed./1 Nevertheless, in rejecting it the district judge considered it properly filed under Rule 59. That was generous, for the motion should have been judged under the more restrictive regimen of Rule 60(b). That is what we will do.

The denial of Rule 60(b) motions are reviewed for abuses of discretion. Cincinnati Ins. Co. v. Flanders Elec. Motor Serv., Inc., 131 F.3d 625, 628 (7th Cir. 1997). But the rule is not intended to correct mere legal blunders, see Russell v. Delco Remy Div. of General Motors Corp., 51 F.3d 746, 749 (7th Cir. 1995), so we limit our consideration to discerning whether the district court erred in assessing factors that could render the judgment vulnerable to attack i.e., mistake, inadvertence, surprise, excusable neglect, newly discovered evidence or fraud.

This standard of review eviscerates Cash's appeal. His arguments--that the court wrongly excluded evidence, misinterpreted the evidence that was presented, and did not understand his theory of the case cannot be shoe-horned into grounds for Rule 60(b) relief. The rule is not an alternate route for correcting simple legal errors. Rather, it exists to allow courts to overturn decisions where "special circumstances" justify an "extraordinary remedy." See Russell, 51 F.3d at 749. Cash's appeal presents no such case. He simply tripped over the time clock and wants to be able to appeal as if he did not. Were we to allow appellants to follow this route, the rules governing the timeliness of appeal would quickly lose their bite, and one of the law's primary purposes--to settle disputes finally-- would be undermined. Since Cash's arguments fall outside the class of mistakes Rule 60(b) exists to correct, they fail. The decision of the district court is

AFFIRMED.

/1 The notice of appeal on the merits of the original judgment was also late and is not properly before us.