**UNPUBLISHED ORDER**
Not to be cited per Circuit Rule 53

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued December 13, 2005
Decided March 14, 2006

**Before**

Hon. WILLIAM J. BAUER, *Circuit Judge*

Hon. MICHAEL S. KANNE, *Circuit Judge*

Hon. ANN CLAIRE WILLIAMS, *Circuit Judge*

No. 04-3148

| | |
|---|---|
| PAUL PARKS,<br>    *Plaintiff-Appellant,* | Appeal from the United States District<br>Court for the Southern District of Illinois |
| *v.* | No. 2003-CV-4009-JPG |
| JESS MCDONALD and ARPINAH<br>BRAIK,<br>    *Defendants-Appellees.* | J. Phil Gilbert<br>*Judge.* |

**O R D E R**

Paul Parks sued the former director and an investigator for the Illinois Department of Children and Family Services ("DCFS") under 42 U.S.C. § 1983 claiming that they violated his rights to procedural and substantive due process while investigating him for child abuse. The district court granted summary judgment for the defendants on both claims. More than ten business days after the entry of judgment, Parks filed what he captioned a "Rule 59 Motion to Reconsider and Amend Judgment," which the district court denied. Parks filed a notice of appeal, but a motions panel of this court concluded that it was untimely as to the underlying order on summary judgment and limited the appeal to review of the order denying the purported "Rule 59" motion. Parks essentially has ignored this limitation and has briefed and argued the appeal as if the underlying summary

judgment, rather than a motion under Federal Rule of Civil Procedure 60(b), is at issue. Because Parks has not satisfied any of the grounds for relief under Rule 60(b), we affirm the denial of his motion.

I.

Tambra Geary, Parks's ex-wife and the mother of their three sons, took one of their sons to the hospital on Friday, November 3, 2000, after he arrived for a weekend visit and complained of pain in his back and buttocks. The doctor observed multilevel bruising in that area, and the boy told him that the bruises were from a spanking his father had given him the day before. A deputy sheriff reported the incident to DCFS, and an investigator contacted Parks, the custodial parent, and told him that if he did not agree to let Geary keep the boys during the investigation, DCFS would remove them and seek an order of protection. Parks responded that an order of protection could jeopardize his job with the Illinois Department of Corrections ("IDOC"), but the investigator, who is not a defendant, replied that Parks's job was not his concern. The boys stayed with Geary that weekend, and on Monday, November 6, a state court granted Geary's *ex parte* petition for an emergency order of protection giving custody to Geary and prohibiting any contact with Parks. A hearing to consider whether that temporary order should be extended beyond its scheduled November 22 expiration was continued by agreement between Parks and Geary, and on December 6, 2000, the order was dissolved after Parks and Geary reached an agreement giving primary custody temporarily to Geary.

Another DCFS investigator, defendant Arpinah Braik, took over the investigation and interviewed Parks in January 2001. When Braik asked Parks how his son had been bruised, Parks opined that the boy may have gotten the bruises from playing football. After that interview, Braik recommended that an "indicated" finding of child abuse be entered against Parks. Parks contested the finding at DCFS administrative hearings in April and July 2001, and in October 2001 the hearing officer recommended that the finding be expunged. The former director of DCFS, defendant Jess McDonald, rejected that recommendation, and Parks then went to state court and obtained a default judgment expunging the indicated finding of child abuse. Parks and Geary's temporary custody arrangement ended in July 2002 when Parks again was awarded primary custody of the boys.

Parks then filed his complaint in federal court claiming that Director McDonald and investigator Braik deprived him of procedural due process by failing to adequately investigate the allegation of child abuse. He further claimed that the defendants deprived him of his substantive due process right to a relationship with his sons by coercing him into transferring custody to Geary. In his later deposition,

Parks testified that IDOC policy requires dismissal or reassignment of employees against whom a finding of domestic violence is entered. He also stated that he knew of IDOC employees who had been fired or moved to different positions in accordance with the policy, but he could not remember their names. Parks theorized that his right to substantive due process was violated because, he says, DCFS employees used his fear of losing his job to force him to enter the custody agreement with Geary.

The district court entered summary judgment for the defendants on June 24, 2004. As to substantive due process, the court held that there was no evidence that the defendants caused any intrusion into Parks's familial relationship with his sons because the emergency order of protection was issued by a state circuit court at Geary's request, and because the subsequent custody arrangement was a private matter between Parks, Geary, and the circuit court supervising their divorce proceedings. The district court also held that Parks lacked evidence that the defendants coerced him into accepting the custody agreement and noted the absence of evidence to corroborate his belief that he would lose his job if an order of protection was entered against him. The court further held that, even assuming an intrusion into Parks's familial relationship with the boys, he was not denied substantive due process because DCFS had a reasonable suspicion of child abuse. As to procedural due process, the district court held that McDonald enjoyed qualified immunity, and that there was no evidence that investigator Braik took inappropriate action in the investigation.

On July 12, 2004, eleven business days after entry of judgment, Parks filed a purported "Rule 59(e) motion" asserting that the district court had "erred in its understanding of certain material facts," including the IDOC policy concerning employees subject to an order of protection. According to Parks, his "further investigation" had uncovered the actual written policy, which he attached to his motion, and the names of employees affected by it. The defendants, recognizing that Parks's motion was untimely under Rule 59, argued that it should be analyzed under Rule 60(b) and denied. The district court entered a brief order on July 20 denying the motion, and Parks appealed on August 18.

A motions panel of this court determined that Parks's postjudgment "Rule 59(e) motion" did not toll the time limit for filing a notice of appeal, and that his August 18 notice of appeal thus came too late to call into question the underlying grant of summary judgment. The motions panel therefore limited review to the order denying Parks's postjudgment motion, although without explicitly identifying the motion as one under Rule 60(b).

II.

Despite the motions panel's limitation on the scope of his appeal, Parks in his opening brief addresses the case as if the summary judgment ruling were under review. It is not. Parks's postjudgment submission was untimely as a motion under Rule 59(e), and consequently it is deemed to be a motion to vacate under Rule 60(b). *See Talano v. Nw. Med. Faculty Found., Inc.*, 273 F.3d 757, 762 (7th Cir. 2001) (noting automatic conversion of untimely Rule 59(e) motion to one under Rule 60(b)). The denial of Rule 60(b) relief is reviewed only for abuse of discretion, *Castro v. Bd. of Educ. of City of Chi.*, 214 F.3d 932, 934 (7th Cir. 2000), and rarely will be overturned on appeal, *see Talano*, 273 F.3d at 762 (noting that Rule 60(b) relief is extraordinary remedy that is granted only in exceptional circumstances).

Parks, though, tries to evade this stringent standard of review by arguing for the first time in his reply brief that under the "unique circumstances" doctrine of *Thompson v. INS*, 375 U.S. 384, 387 (1964), his postjudgment motion should be evaluated under the less onerous standard for Rule 59(e) motions rather than that of Rule 60(b). By issuing an order directing the defendants to respond to his "Rule 59(e) motion," he argues, the district court assured him that it would deem his motion timely filed under Rule 59(e). And review of a Rule 59(e) ruling, he adds, "obviously" requires this court to examine the ruling "in the context of" the decision at summary judgment.

Parks is correct that, in the unique circumstance where a litigant relies on a specific but mistaken assurance from the district court that a postjudgment submission is a timely Rule 59(e) motion that will toll the time for filing a notice of appeal, fairness requires courts of appeals to excuse the untimeliness of the appeal. *See Osterneck v. Ernst & Whinney*, 489 U.S. 169, 178 (1989) (explaining *Thompson*). But we take a narrow view of the "unique circumstances" doctrine and, for example, have interpreted "specific assurance" to mean something more affirmative than issuing a minute order purporting to grant an extension of the time for filing motions under Rule 59(e). *See Props. Unlimited, Inc. Realtors v. Cendant Mobility Servs.*, 384 F.3d 917, 921 (7th Cir. 2004). Nothing more affirmative happened here. Rather than assuring Parks that his submission was a timely motion under Rule 59(e) that would toll his deadline for appealing the ruling on summary judgment, the district court merely repeated Parks's caption in advising the defendants to respond to his motion. *See In re Bond*, 254 F.3d 669, 674-75 (7th Cir. 2001). In any event, arguments raised for the first time in reply briefs are waived. *Hess v. Reg-Ellen Mach. Tool Corp.*, 423 F.3d 653, 665 (7th Cir. 2005). Accordingly, we review the denial of his motion under the standard of Rule 60(b).

Parks then argues, as he must, that his postjudgment motion falls within the narrow confines of Rule 60(b). *See Hope v. Davis*, 43 F.3d 1140, 1143 (7th Cir. 1994) (explaining that untimely motion under Rule 59(e), because it effectively is a motion under Rule 60(b), "must be shaped to the specific grounds for modification or

reversal found in 60(b)"). Parks contends that the summary judgment should have been reopened because he possessed newly discovered evidence: the written IDOC policy concerning employees against whom an order of protection has been entered, as well as the names of witnesses dismissed in accordance with the policy. Rule 60(b)(2) permits relief where a litigant presents newly discovered evidence that could not have been discovered by due diligence in time for trial or, as in this case, summary judgment. To satisfy Rule 60(b)(2), Parks was required to show that: (1) the evidence was discovered after summary judgment; (2) he was diligent in making the discovery; and (3) the evidence would have altered the result reached by the district court. *See Jones v. Lincoln Elec. Co.*, 188 F.3d 709, 732 (7th Cir. 1999).

Parks did not prove any of these elements. The evidence was not newly discovered because his deposition testimony shows that he was aware of the policy and the witnesses affected by it before summary judgment was granted. *See Zurich N. Am. v. Matrix Serv., Inc.*, 426 F.3d 1281, 1290 (10th Cir. 2005) (holding that evidence was not newly discovered where litigant knew that it was missing prior to trial). Parks's failure to obtain a copy of the written policy or the names of related witnesses prior to summary judgment also demonstrates a lack of diligence because he knew about the potential evidence, and had access to it, but simply failed to locate it before responding to the summary judgment motion. *See United States v. McGaughey*, 977 F.2d 1067, 1075 (7th Cir. 1992) (noting failure to search for document showed lack of due diligence); *U.S. Xpress Enters., Inc. v. J.B. Hunt Transp., Inc.*, 320 F.3d 809, 815 (8th Cir. 2003) (concluding that defendant was not diligent in acquiring latitude-longitude report for negligence suit arising from truck accident where defendant's attorneys knew that plaintiff possessed data but simply failed to request production). And even if Parks had been diligent, the "new" evidence shows only that he had reason to fear a finding of domestic violence but would not create a genuine issue of material fact with respect to his claim of a substantive due process violation. Parks's fear was traceable to the manner in which he disciplined his son, not to the defendants' investigation. As the district court explained, Parks bypassed the opportunity to oppose the threatened order of protection and instead entered into a private agreement with Geary. Parks could have gone to court and opposed entry of a DCFS-initiated order of protection if he believed that DCFS sought the order unjustifiably. *Cf. Doe v. Heck*, 327 F.3d 492, 527 (7th Cir. 2003) (holding that parents stated claim for violation of due process where defendants threatened to remove children from custody of parents without reasonable suspicion of child abuse). In any event, his attorney's determination that it was unnecessary to offer further evidence of the policy at summary judgment on the belief that Parks already had provided "convincing testimony" in his deposition was a tactical decision for which Rule 60(b) provides no relief. *See United States v. 7108 W. Grand Ave.,* 15 F.3d 632, 635 (7th Cir. 1994) (noting that attorney mistakes provide no basis under Rule 60(b) for avoiding judgment);

*Waddell v. Hendry County Sheriff's Office*, 329 F.3d 1300, 1310 (11th Cir. 2003) (same).

Finally, Parks contends that more than once the district court overlooked evidence in the record and thus failed to appreciate the existence of a genuine issue of material fact. In particular, Parks faults the court's statement that he never offered Braik a "reasonable explanation" for the boy's bruises before she attributed them to the spanking and entered an "indicated" finding of child abuse; Parks insists that he did provide an alternative explanation: his son's horseback riding activities. Parks, though, misreads the court's decision. What the court says is that Parks offered no alternative explanation for the bruising *before* Braik issued her "indicated" finding in January 2001. Parks did not offer the horseback riding explanation when Braik interviewed him in January 2001 and apparently did not suggest riding as a likely cause for the bruising until the administrative hearings months later. At oral argument Parks's counsel contended that the reason Parks never mentioned the horseback riding to Braik was that he never had the opportunity. But Parks must have had an opportunity because he managed to inform Braik during the interview that his son could have been bruised playing football. Regardless, the failure to see or appreciate evidence at summary judgment is not a ground for relief under Rule 60(b). *See Cash v. Ill. Div. of Mental Health*, 209 F.3d 695, 698 (7th Cir. 2000) (explaining that plaintiff's arguments that trial judge "wrongly excluded evidence, misinterpreted the evidence that was presented, and did not understand his theory of the case" could not be "shoe-horned into grounds for Rule 60(b) relief"). The appropriate vehicle for that argument was a timely appeal, and Rule 60(b) is not a substitute. *Bell v. Eastman Kodak Co.*, 214 F.3d 798, 801 (7th Cir. 2000).

Accordingly, we AFFIRM the denial of Parks's motion.