In the

# United States Court of Appeals

## For the Seventh Circuit

No. 12-1581

ROBERT F. HOYT,

*Plaintiff-Appellant,*

*v.*

MICHAEL L. BENHAM, *et al.*,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Southern District of Indiana, New Albany Division.
No. 08 C 179 — **Richard L. Young**, *Chief Judge*.

ARGUED NOVEMBER 6, 2015 — DECIDED FEBRUARY 8, 2016

Before WOOD, *Chief Judge*, and POSNER and EASTERBROOK, *Circuit Judges*.

POSNER, *Circuit Judge*. Robert Hoyt—owner since 2001 of a 40-acre lot (on which there is a cabin) in a heavily forested region about an hour's drive from Bloomington in southwestern Indiana—has a problem. His lot is surrounded by lots owned by others, and none of the others will allow him to use any part of their land to enable vehicular access to his property. No public roads touch his land. To reach a public

road he has to be able to drive through at least one of the lots that surround him. The owner of the lot directly to his north allows him to walk through that lot to and from his lot, but that's it so far as access is concerned. So Hoyt has turned to law, thus far unsuccessfully.

This is an overly complicated, overly litigated case—a legal monstrosity, really—and we'll simplify it ruthlessly, beginning with a highly simplified diagram of the nine lots involved in the case (though of equal size in the diagram, we don't know their actual dimensions). Hoyt's lot is in the center. The lot to his immediate west is owned by the U.S. Forest Service, but the other lots, or at least those that Hoyt seeks access to, are privately owned.



Although in principle Hoyt could obtain access to a pub-
lic road from every point of the compass, in fact the only
public road he seeks access to is the West Burma Road,
which enters the nine-lot complex at the bottom of the
southwestern lot and runs in a northeasterly direction
through the southern lot and the northwestern corner of the
southeastern lot and into the eastern lot, coming close to the
southeastern corner of Hoyt's lot when it crosses the north-
western corner of the southeastern lot, but not crossing into
Hoyt's lot. (The slanted line in the diagram approximates the
location of the West Burma Road in relation to the lots.)
Hoyt seeks access only through the three connected private
roads shown by the curved vertical line in the diagram
(which like the line representing the West Burma Road is on-
ly approximate). The route begins in the western lot (the
Forest Service's lot) and then passes through the southwest-
ern and southern lots. Hoyt does not (at least in this lawsuit)
seek access through the eastern or northern or southeastern
lots. But his chosen route does require access to the western
and southwestern and southern lots, rather than just to one
or two of them. Neither the road that he'd like to use in the
western lot, nor the road he'd like to use in the southwestern
lot, connect to the West Burma Road directly. Rather, the
road in the western lot connects to the road at the eastern
edge of the southwestern lot that in turn connects to the
short road in the southern lot that intersects the West Burma
Road a few hundred feet south of Hoyt's lot. (Here we pause
briefly to mention that the facts set forth in this opinion
come from the findings made by the district judge in ruling
on motions for summary judgment, from the findings he
made after the bench trial, and from deeds and other docu-

ments in the record that are undisputed or accepted as authentic.)

One might think it straightforward for Hoyt to be able to purchase an easement from each of the three lot owners, which is to say a right to use their private roads to reach the public road. The roads are very close to the edges of the lots, and one of them, the road he'd like to be able to use in the southwestern lot, runs right along the eastern edge of the lot. Because the three roads are far from the centers of the lots, his use of them would not cause a serious disturbance of the owners' activities on their lots, at least in the short run, though since Hoyt currently resides in a rented house in the northern lot (rather than in the cabin on his own lot) he might change his residence to his own lot were it accessible. But the neighbors are unwilling to sell him an easement—refusing even to name a price at which any of them would sell him one. So he has brought this suit, in which he claims *already* to have fee-simple ownership of the road on the southwestern lot, or alternatively easements over that lot and the western lot. Another alternative that he presses on us is that all three roads are already public roads, which anyone can use.

He brought this suit to vindicate his claims in an Indiana state court in 2001, and later added claims against the Forest Service under both Indiana law and the federal Quiet Title Act, 28 U.S.C. § 2409a, and also (though just under Indiana law) against the owners of the other two roads. The Forest Service (technically the United States) removed the suit against it to federal district court in 2008. The district court retained supplemental jurisdiction over the private defend-

ants, 28 U.S.C. § 1367, and as far as we're aware there's been no further litigation in state court.

The district judge granted motions to dismiss or motions for summary judgment in favor of the defendants on some counts of the complaint, and entered judgment for them on the remaining counts after a bench trial. So Hoyt lost his case, and now appeals.

The great Holmes once said in a letter to his friend Frederick Pollock: "I long have said there is no such thing as a hard case. I am frightened weekly but always when you walk up to the lion and lay hold the hide comes off and the same old donkey of a question of law is underneath." That is an apt description of the present case. At first glance the case is formidable indeed. Hoyt's third amended complaint, filed in June 2009, contains 70 paragraphs and his opening brief in this court is 59 pages long—144 pages long if the appendices are included. The brief's table of authorities lists 140 judicial decisions and 30 other items. The three appellee briefs and Hoyt's reply brief are of more modest dimensions and contain fewer citations, but cumulatively are formidable. The litigation is in its fifteenth year, even though the bench trial lasted only two days, and has been pending in this court since 2012 even though oral argument was not held until late in 2015.

The duration of this litigation is inexplicable and inexcusable—for it's actually a pretty simple case! Let's begin with Hoyt's claim against the Forest Service. He argues that he has a "prescriptive easement" in the private road in the Forest Service's lot that connects to the private road in the southwestern lot that in turn connects to the private road in the southern lot and, via the West Burma Road, to the out-

side world. To obtain a property right by prescription (which is to say by adverse possession rather than by purchase or discovery) requires in the case of an easement—which so far as pertains to this case is a right to travel across someone else's land—that the would-be acquirer have used the road or path in which he claims the easement continuously for a specified period of time (under Indiana law, 20 years), and that by the nature of his use he has put the owner on notice of his claiming an easement. *Wilfong v. Cessna Corp.*, 838 N.E.2d 403, 405–06 (Ind. 2005). Although such easements (called "prescriptive") can't be acquired over federal land, the federal government can purchase land that is already subject to a prescriptive easement, as Hoyt is arguing happened to the western lot in 1967; if the government does that, the easement remains in force.

Hoyt did not own the central lot, bordering on the Forest Service's lot, back then, let alone for 20 years before then; he didn't acquire his lot until 2001. He claims that a previous owner of the lot had used the road in the western lot between 1930 and 1954, but there is no evidence that this use continued for the next 13 years—that is, before the Forest Service acquired the lot—or for that matter afterward, and lack of subsequent use could support a finding of abandonment even if a prescriptive easement had been obtained. Critically, Hoyt offers no support for his claim that the use of the road by his predecessor was under a claim of right or otherwise adverse to the lot's owner, or that that owner was on notice of any such claim. Hoyt's claim to a right to use the Forest Service's road thus fails.

We turn our gaze to the road to which the Forest Service's road connects in the lot immediately to its south. That

is the straight road that runs down the eastern edge of the southwestern lot from the point at which the western and southwestern and southern lots touch the southwestern corner of Hoyt's lot. (The parties refer to this road, which is 30 feet wide and about 590 feet long, as The Strip or the .41 Acre Strip. We'll call it the Strip.) Some time before Hoyt bought his lot, it and the southwestern lot had been under common ownership, and there was traffic between the two lots. But this traffic must also have crossed the western and southern lots, because the point of contact between what is now Hoyt's lot and the southwestern lot is just that—a point, having no width. And that's actually a serious problem for his case. Had he access to the north-south road in the Forest Service's lot, he would be connected to the Strip. Without that access, which the Forest Service refuses to grant him, he has no way to reach the roads in the southwestern and southern lots. Since the West Burma Road crosses the southwestern lot (see diagram), anyone with access to that lot has access to a public road. So if Hoyt owned the Strip (as he claims), he could get from there to the West Burma Road, but he would still need a way to get from his property to the Strip.

In 1954 the owner of the two lots sold the southwestern one. The sale could have cut off the seller from access to the West Burma Road; the record doesn't indicate whether the seller made any provision (as by retaining an easement) for giving him access to the West Burma Road through the southwestern lot. Eleven years later, however, the owners of the western lot, wanting access to the West Burma Road via the southwestern lot, bought from the owner of that lot the Strip, described in the deed as a "right of way." When the

Forest Service bought the western lot it also purchased an easement over the Strip.

In 2007, six years after Hoyt bought his lot, the heir of the former owners of the western lot quitclaimed the Strip to Hoyt, and he argues that what he got was fee simple in the right of way. He reasons that the owners of the western lot had owned the Strip in fee simple and had sold only an easement to the Forest Service, leaving them still owning the Strip. The owners of the southwestern lot disagree. They claim that the 1965 deed conveyed only an easement, which was then sold to the Forest Service in 1967, with the result that there was nothing left for the heir to quitclaim to Hoyt in 2007.

One might think that Hoyt would be content with an easement and not insist as he does on being the owner of the road—an absurd insistence because if valid it would enable him to prevent the owner of the southwestern lot from using the road unless that owner bought an easement from him. Hoyt could have obtained an easement even though the Forest Service also has one, but he could have obtained it only from the Strip's owner because if the owner of the western lot had purchased only an easement in the Strip in 1965 he had only one easement to sell, and having sold it to the Forest Service he couldn't sell it to Hoyt.

Even if Hoyt had an easement, his use of the road would be limited to what it was when the easement was granted. An easement is granted on the basis of an understanding of what the owner of the easement will be allowed to do with it—and it hasn't been shown that the understanding of what the owners of the western lot could do on the road in the southwestern lot included paving a road, as Hoyt wants to

do. And much of the time the Strip was not a road at all, but just a strip of land on which a road might be (and eventually was) built. Now there's a gravel road, and Hoyt wants to be able to drive an automobile over it. But there is nothing to suggest that he could have obtained an easement that would have allowed him to drive back and forth on the Strip between the West Burma Road and his lot when the Strip did not exist as a road, for he would have needed an easement that expressly allowed him to build a road on another person's property.

He bases his claim of a right to access the Strip on a 1965 deed that created a "right of way" on the Strip, and the term is usually—and we'll assume in this case—equivalent to an easement. See *Brown v. Penn Central Corp.*, 510 N.E.2d 641, 644 (Ind. 1987); *Clark v. CSX Transportation, Inc.*, 737 N.E.2d 752, 758–59 (Ind. App. 2000). But the deed that conferred the right of way was made to someone else, and anyway Hoyt's primary reliance is on a 2007 quitclaim deed. That deed indeed purports to convey the Strip to Hoyt, but the deed was granted by someone who didn't have any property interest in the Strip. At times when there was (as there seems to have been only intermittently) a usable road on the Strip, as there is now, the owner of the Strip had every right to forbid Hoyt's predecessor, as he now forbids Hoyt, to use the road. Hoyt's predecessor acceded without protest.

Hoyt has also failed to prove that the road on the Strip (and the connecting segments on the western and southern lots) has become a public road, open to all. *Jackson v. Board of Commissioners*, 916 N.E.2d 696, 703–04 (Ind. App. 2009), explains that "a road does not become a public road simply because the owner selectively permits a few members of the

public to use it … . There was no evidence that people other than neighbors, campers, and government officials used the road after 1977. These were all people [whom the owners] gave permission to use the road. … As there is no evidence the public used the road for twenty years, the [County] Commissioners did not prove it became a public road by public use." Our case is similar. As the district court found, the only people who used the road for the required twenty-year period were horseback riders, and horseback riding is too selective a use of a private road to convert it to a public highway. (Some old cases say that a "horseway" or "foot-way" can be a public way, e.g., *Pitser v. McCreery*, 88 N.E. 303, 305, 307 (Ind. 1909), but we find no cases that hold that in the automobile era an owner's permitting foot or horse traffic creates a public highway, which therefore is from then on open to all vehicles.) There is just a handful of reports of tire tracks or four-wheelers being seen on the road, and although Hoyt's predecessor did drive a pickup truck on the road, he did so only for six years.

Hoyt's final claim is that he has an easement of necessity over the southwestern lot. If the severance of two properties leaves one without access to a public road, the newly land-locked property acquires by operation of law an easement across the property that still has access. See, e.g., *Cockrell v. Hawkins*, 764 N.E.2d 289, 292–93 (Ind. App. 2002). Hoyt claims that the severance of his lot from the southwestern lot in 1954 deprived him of access to a public road, because the only access was over the western and southwestern lots. But he has not shown that his predecessor had any right to cross the western lot before the severance in 1954; and if not the severance isn't responsible for Hoyt's lack of access. More important, he hasn't shown that his predecessor could not

have used a northerly route in 1954, when the northern lot was under the same ownership as his lot.

A further obstacle to Hoyt's claimed right of access is that many of his theories, even if successful, would give him access only to particular segments of road, and not a complete path from his lot to the West Burma Road. Notably he wants to drive down the Strip to its intersection with a short road in the southern lot that intersects the West Burma Road. But to be allowed to use this route he would need—what he does not have—a right of access to the short road in the southern lot even if he has (which to repeat he has not) a right of access to the north-south road in the southwestern lot.

And that's it for Hoyt. Even if he had an easement over the Forest Service's road, which he doesn't, and an easement over the road abutting the eastern border of the southwestern lot (the Strip), which he also doesn't, he could not reach the West Burma Road (the public road that is the goal of his access quest) because he has no right of access to the road in that lot that runs from the Strip to the West Burma Road. And anyway that little road in the southern lot and the connecting road in the southwestern lot, even if they were once public roads, have been abandoned because there is no evidence of any public use other than by pedestrians since 1990. So plainly there is no public road between Hoyt's lot and the West Burma Road in the southern lot, and equally plainly he has no right to insist on free passage from his lot to the public road over the string of roads discussed in this opinion.

There are some other issues, but they are of no general significance and we'll let their resolution by the district court stand without further discussion—with one exception. The

owners of the southern lot ask us to award them fees under Fed. R. App. P. 38 to compensate them for the cost of opposing Hoyt's appeal, on the ground that the appeal is frivolous. But to be entitled to such fees they would have had to ask for them in a separate motion, *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 671 (7th Cir. 2012), which they failed to do. And so their motion for fees is denied and the judgment of the district court is

AFFIRMED