In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 17-1645 & 17-1786

BENNIE KENNEDY,

*Plaintiff-Appellant*,

and

JOHN H. DAVIS,

*Respondent-Appellant*,

*v.*

SCHNEIDER ELECTRIC,
formerly known as SQUARE D COMPANY,

*Defendant-Appellee*.

_____

Appeals from the United States District Court for the
Northern District of Indiana, Hammond Division.
No. 12-CV-122 — **Paul R. Cherry**, *Magistrate Judge*.

_____

ARGUED JANUARY 10, 2018 — DECIDED JUNE 19, 2018

_____

Before WOOD, *Chief Judge*, and HAMILTON, *Circuit Judge,* and BUCKLO, *District Judge.* [*]

HAMILTON, *Circuit Judge*. In 2012, Bennie Kennedy filed a lawsuit against his longtime employer, Schneider Electric. In 2014, the district court granted summary judgment for Schneider Electric. More than a year later, and without offering any new evidence, Kennedy's lawyer filed a motion to set aside the judgment for fraud on the court, accusing Schneider Electric's lawyers of suborning perjury. The district court denied that motion and exercised its discretion to impose sanctions on Kennedy's lawyer under Rule 11. Kennedy appeals the denial of his motion, and his lawyer appeals the sanction order. We affirm both decisions.

I.  *Factual Background and Procedural History*

   A.  *The Initial Lawsuit*

Plaintiff Bennie Kennedy has decades of experience in the safe operation and maintenance of electric-power distribution equipment. From 2004 to 2010, he taught classes in electrical and industrial safety at an Illinois community college, Prairie State College. Kennedy did this teaching in addition to his day job with defendant Schneider Electric, whose proprietary power-distribution equipment he knows very well from years of first-hand experience. To protect its proprietary information, Schneider Electric requires its employees to obtain advance approval before they teach classes or submit articles for publication.

---

[*] Hon. Elaine E. Bucklo of the Northern District of Illinois, sitting by designation

Without obtaining Schneider Electric's permission, in 2010 Kennedy published two articles about power-distribution equipment in trade publications. Kennedy identified himself in these articles as a Prairie State instructor. When Schneider Electric's marketing staff caught wind of these articles in July 2010, a human resources manager contacted Prairie State to ask about the contents of Kennedy's course materials, which she worried might have contained proprietary information.

That fall, while reviewing the credentials of instructors expected to teach at the college the following spring, Prairie State officials realized that Kennedy did not possess the qualifications required to teach at the college. As Kennedy later admitted, he did not meet any of the three possible combinations of education and experience that would have qualified him to teach electrical safety classes at Prairie State. The following spring, after asking Kennedy for information about his credentials and reviewing his response, Prairie State decided not to rehire Kennedy as an adjunct instructor. Prairie State left open the possibility, though, that Kennedy could be reinstated in the future if he could prove that he had the required qualifications.

Almost a year later, Kennedy filed this lawsuit against Schneider Electric alleging defamation and malicious interference with an advantageous relationship. His complaint alleged that Schneider Electric's human resources staff had defamed him by calling Prairie State and expressing concern about his course materials. Kennedy further alleged that this telephone call resulted in the loss of his teaching position. Kennedy filed the case in state court, but after his lawyer told Schneider Electric's lawyer that he would "venture to guess"

that damages would be over $75,000, Schneider Electric removed the case to the Northern District of Indiana based on diversity jurisdiction under 28 U.S.C. § 1332.

Kennedy's lawsuit survived a Rule 12 motion to dismiss on the pleadings, but in 2014 the district court granted Schneider Electric's motion for summary judgment. Magistrate Judge Cherry, presiding with the consent of the parties under 28 U.S.C. § 636(c), found that the evidence showed beyond reasonable dispute that Prairie State "decided to revoke Plaintiff's teaching approval *solely* because he did not meet [Prairie State's] credentialing requirements" and not because of Schneider Electric's telephone call. Dkt. 49 at 15. The court entered final judgment in favor of Schneider Electric the same day. Kennedy did not appeal.

B. *The Rule 60 Motion and Sanctions*

More than a year after judgment was entered, Kennedy filed a motion to set aside the judgment for fraud on the court. The motion invoked Federal Rule of Civil Procedure 60(d)(3), which does not actually authorize relief but provides that the rest of Rule 60 does not limit a court's inherent power to set aside a judgment for fraud on the court. See Fed. R. Civ. P. 60(d)(3); see also Fed. R. Civ. P. 60(b) & (c)(1). A motion invoking this inherent power is not subject to the one-year limit for motions under Rule 60(b)(3). See *In re Golf 255, Inc.*, 652 F.3d 806, 809 (7th Cir. 2011); *Oxxford Clothes XX, Inc. v. Expeditors Int'l of Washington, Inc.*, 127 F.3d 574, 578 (7th Cir. 1997).

Kennedy's motion argued that summary judgment had been granted based on perjured deposition testimony and a perjured affidavit. He further asserted that Schneider Elec-

tric's lawyers knowingly submitted this allegedly perjured evidence to the district court. To support these serious accusations, Kennedy's lawyer pointed only to discrepancies in the evidence that had been submitted to the district court for and against the original motion for summary judgment. Because Schneider Electric's human resources manager could not supply a definition of "proprietary information" at her deposition, Kennedy argued that her telephone call to Prairie State could not actually have been for the purpose of protecting that information. From this shaky foundation, he proposed the conclusion that her testimony about her purpose must have been perjured. Kennedy also accused the human resources manager of lying about when she learned of his teaching activities.

In addition, Kennedy attacked an affidavit from a Prairie State official as "clearly false" because it did not address the fact that a full accrediting review of Prairie State had occurred in the 2008–2009 academic year while Kennedy was teaching there. Kennedy also thought the declaration was perjured because it said Prairie State's decision to revoke his teaching credentials had "no connection" to the call from Schneider Electric, yet in an email the same official had written: "I have concerns with regards to the liability of Mr. Kennedy and the college based on the conversations with [Schneider Electric]." By submitting these documents in support of their summary judgment motion, Kennedy argued, Schneider Electric's lawyers had committed fraud on the court.[1]

---

[1] Kennedy's lawyer made various other claims regarding counterfeit evidence, statements by the district court, and conflicts of interest in the Rule 60 motion, but failed to present specific and coherent legal arguments

The district court denied Kennedy's Rule 60 motion. Magistrate Judge Cherry explained that Kennedy had "failed to show how this rises to the level of fraud on the court" since the motion relied only on evidentiary discrepancies that were known at the time summary judgment was granted. Dkt. 72 at 7. These arguments were available at that time and "should have been made in a motion to reconsider or on appeal," not in a later fraud-on-the-court motion invoking Rule 60(d)(3), *id.*, citing *In re Golf 255*, 652 F.3d at 809, which requires clear and convincing evidence of fraud to overturn a judgment, *Wickens v. Shell Oil Co.*, 620 F.3d 747, 759 (7th Cir. 2010). Since Kennedy advanced no new evidence to support his accusation that Schneider Electric's lawyers knowingly committed fraud on the court, the district court also granted a motion for Rule 11 sanctions against Kennedy's lawyer, John H. Davis, for the costs of having to defend against the Rule 60 motion. Dkt. 72 at 14–15; Dkt. 77 at 2 (finding defendant's proposed hourly rate and number of hours reasonable and awarding $10,627.16). Plaintiff Kennedy and lawyer Davis appealed the district court's decisions regarding the Rule 60 motion and the Rule 11 sanctions, respectively.

---

on those issues to the district court. Kennedy's briefs on appeal are no different. Consequently, those arguments are forfeited. See Fed. R. App. P. 28(a)(6)–(8); *Voelker v. Porsche Cars N. Am., Inc.*, 353 F.3d 516, 527 (7th Cir. 2003) (under Rule 28 "an appellant's argument must provide both his contentions and the reasons for them," including supporting authorities) (internal quotation marks omitted).

II. *Analysis*

A. *Rule 60 Motion to Set Aside the Judgment*

We review the denial of a Rule 60 motion deferentially, for an abuse of discretion. *McCormick v. City of Chicago*, 230 F.3d 319, 326–27 (7th Cir. 2000). As we have said often, Rule 60 relief is limited to "extraordinary" situations where a judgment is the inadvertent product of "special circumstances and not merely [the] erroneous application[] of law." *Russell v. Delco Remy Div. of Gen. Motors Corp.*, 51 F.3d 746, 749 (7th Cir. 1995). We use such language most often in affirming the denial of relief under Rule 60. At the same time, Rule 60 gives district courts the power and discretion to modify their judgments when truly new facts come to light or when the judge recognizes an error and believes it should be corrected. Still, even judges exercising that flexibility must be careful not to undermine too lightly the finality of their judgments. See *Mendez v. Republic Bank*, 725 F.3d 651, 657, 660 (7th Cir. 2013) (noting need to "balance the availability of post-judgment relief with finality interests," which is not a problem "in the rare case where a district judge recognizes a clear legal or factual error" soon after entering judgment).

Rule 60 recognizes two types of fraud in the adversarial process that, if demonstrated within the proper timeframe, may merit relief from a final judgment. The first type is "fraud[,] … misrepresentation, or misconduct by an opposing party," Fed. R. Civ. P. 60(b)(3), which prevented the party seeking relief "from 'fully and fairly presenting'" his meritorious case at trial. *Wickens*, 620 F.3d at 759 (finding that discovery violation did not amount to fraud), quoting *Lonsdorf v. Seefeldt*, 47 F.3d 893, 897 (7th Cir. 1995). Parties asserting this

type of fraud must move for relief within one year of "the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1).

The second type is "fraud on the court," see Fed. R. Civ. P. 60(d)(3), which we have described as fraud "directed to the judicial machinery itself" and involving "circumstances where the impartial functions of the court have been directly corrupted." *In re Whitney-Forbes, Inc.*, 770 F.2d 692, 698 (7th Cir. 1985) (citations omitted). Motions seeking relief in light of fraud on the court can be brought at any time after judgment because the "conduct … might be thought to corrupt the judicial process itself." *Oxxford Clothes*, 127 F.3d at 578. Examples include situations where "a party bribes a judge or inserts bogus documents into the record." *Id.*[2]  But because a "motion to set aside a judgment on the ground of fraud on the court has no deadline" and can be brought at any time under Rule 60(d)(3) to challenge final judgments, the definition of "fraud" contemplated by the rule must be "defined narrowly lest it become an open sesame to collateral attacks." *In re Golf 255*, 652 F.3d at 809 (internal quotations and citation omitted).[3]

---

[2] In contrast, we have rejected allegations of fraud on the court where the record indicates "a technical violation of the rules" governing ex parte contacts with bankruptcy judges and "a serious infraction of those rules in an unrelated case." E.g., *In re Met-L-Wood Corp.*, 861 F.2d 1012, 1019 (7th Cir. 1988).

[3] Rule 60 was amended in 2007 to move parts of old subsection (b) into new subsections (b), (c), (d) and (e). Cases from before 2007 refer more generally to Rule 60(b) when discussing both general fraud and misconduct of an opposing party (now styled as a Rule 60(b)(3) matter) and fraud on the court (now addressed under Rule 60(d)(3)). Whether the moving

We have therefore set a high bar for what constitutes fraud on the court under Rule 60(d)(3). Critically for this case, the alleged fraud must go beyond mere discrepancies in the record evidence available at the time judgment was entered. The fraud must have been the kind of fraud that ordinarily could not be discovered, despite diligent inquiry, within one year or even many years. *Id.* We explained in *Oxxford Clothes*: "A lie uttered in court is not a fraud on the liar's opponent if the opponent knows it's a lie yet fails to point this out to the court. If the court through irremediable obtuseness refuses to disregard the lie, the party has … a remedy by way of appeal." 127 F.3d at 578.

This case presents a situation similar to *Cash v. Illinois Division of Mental Health*, 209 F.3d 695 (7th Cir. 2000), where the plaintiff lost in a Title VII bench trial. The plaintiff missed the deadline to file a Rule 59 motion for a new trial but later sought relief by filing a motion that this court labeled a Rule 60 motion to set aside the judgment. *Id.* at 697. Cash argued that the district court mishandled and misinterpreted the evidence at the bench trial. He sought a new trial where the district court would consider the same record all over again, with immaterial alterations. We affirmed the district court's denial of the Rule 60 motion. We explained that arguments:

> that the court wrongly excluded evidence, misinterpreted the evidence that was presented, and did not understand [the plaintiff's] theory of the case … cannot be shoe-horned into grounds for Rule 60(b) relief. The rule is not an

---

party presents the grounds for relief as fraud or as fraud on the court, the same deference extends to district court rulings on such motions.

alternate route for correcting simple legal er-
rors. Rather, it exists to allow courts to overturn
decisions where "special circumstances" justify
an "extraordinary remedy." See *Russell*, 51 F.3d
at 749. Cash's appeal presents no such case. He
simply tripped over the time clock and wants to
be able to appeal as if he did not. Were we to
allow appellants to follow this route, the rules
governing the timeliness of appeal would
quickly lose their bite, and one of the law's pri-
mary purposes—to settle disputes finally—
would be undermined. Since Cash's arguments
fall outside the class of mistakes Rule 60(b) ex-
ists to correct, they fail.

*Id.* at 698. This rationale applies with considerable force to a
motion invoking Rule 60(d)(3) and alleging fraud on the
court, a request for relief that can be brought at any time. See
*In re Golf 255*, 652 F.3d at 809.

Nothing new came to light here. As the district court
stressed, Kennedy had the opportunity to challenge this same
evidence on summary judgment. If the court made a mistake
back in 2014, Kennedy could have asked for reconsideration
and/or appealed. He did neither. Instead, after more than a
year he alleged fraud on the court based on only the evidence
that had been presented on the original motion for summary
judgment. If a disappointed party could win relief through
Rule 60(d) by recycling discrepancies in the evidentiary rec-
ord, few judgments in fact-intensive civil cases would be safe.
We affirm the denial of Kennedy's Rule 60 motion.

B. *Rule 11 Sanctions*

We also review a district court's grant of Rule 11 sanctions for an abuse of discretion. *Northern Illinois Telecom, Inc. v. PNC Bank, N.A.*, 850 F.3d 880, 883 (7th Cir. 2017). To succeed, parties challenging sanctions need to show that "the district court based its decision on an erroneous view of the law or a clearly erroneous evaluation of evidence." *Id.*, citing *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010); see also Fed. R. Civ. P. 11(c).

On appeal, attorney Davis summarizes his factual argument against the sanctions ruling this way: "It is redundant to continue discussing appeals, summary judgments, Rule 60(b) filings. The fact is that Appellant's attorney did *not* rush to file a document that goes after the integrity of a *fellow* attorney." As for law, he cites a 1993 district court case from Iowa that chastised the lawyer there for engaging in "bickering, haranguing, … general interference" and other examples of "Rambo Litigation." See *Van Pilsum v. Iowa State Univ. of Sci. & Tech.*, 152 F.R.D. 179, 180–81 (S.D. Iowa 1993) (adopting creative response under Rule 37 to discourage such discovery tactics). Neither of these points addresses whether or how the district court in this case abused its discretion in deciding to award sanctions against Davis personally.

We appreciate Mr. Davis's initial hesitation before leveling fraud accusations at another lawyer. But he then went ahead and did just that, and without presenting any new evidence of fraud. He offered only inferences and innuendo drawn from the original summary judgment record. Rule 11 "requires counsel to read and consider before litigating," which Davis claims to have done, but it also "establishes an objective test," *U.S. Bank Nat'l Ass'n, N.D. v. Sullivan-Moore*, 406 F.3d

465, 470 (7th Cir. 2005) (citation omitted), that asks whether the attorney engaged in "an inquiry reasonable under the circumstances" before filing a motion. Fed. R. Civ. P. 11(b). Davis makes no effort to explain how his investigations of the facts and law underlying the Rule 60 motion he filed were reasonable. The district court awarded sanctions for having to respond to this motion, and Davis has not advanced a coherent argument that shows how this grant was an abuse of discretion. We affirm the decision of the district court imposing sanctions.

C. *Appellate Sanctions*

Finally, appellee Schneider Electric has asked for an additional sanctions award under Federal Rule of Appellate Procedure 38 against Kennedy and/or Davis for filing frivolous appeals. We deny this request because the request itself was procedurally improper. Rule 38 expressly requires that a party's demand for sanctions come in "a separately filed motion." Like many appellees before it, Schneider Electric merely included a "request" at the end of its merits brief. As we have observed before, "to be entitled to such fees [an appellee] would have had to ask for them in a separate motion … which [it] failed to do." *Hoyt v. Benham*, 813 F.3d 349, 356 (7th Cir. 2016), citing *Heinen v. Northrop Grumman Corp.*, 671 F.3d 669, 671 (7th Cir. 2012). And we cannot help but note the irony inherent in a party's procedurally improper request that the court sanction an opposing party for failing to comply with other procedural rules. See, e.g., *Northern Illinois Telecom*, 850 F.3d at 888–89 (reversing award of Rule 11 sanctions imposed after moving party failed to comply with required warning-shot/safe-harbor procedure under Rule 11(c)(2)); *Heinen*, 671 F.3d at 671 ("this court is not inclined to award

sanctions in favor of a party that cannot be bothered to follow the rules itself"). While Rule 38 authorizes the court to impose sanctions on its own initiative (after giving the potential target an opportunity to respond), the better course here is to signal as clearly as we can that this case should be over and done with.

## *Conclusion*

The district court did not abuse its discretion in denying relief under Rule 60 or in imposing sanctions under Rule 11. The rulings of the district court are AFFIRMED.