NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Argued February 27, 2019
Decided March 4, 2019

**Before**

DIANE P. WOOD, *Chief Judge*

WILLIAM J. BAUER, *Circuit Judge*

ILANA DIAMOND ROVNER, *Circuit Judge*

No. 18-1671

| | |
|---|---|
| ARENDOVICH INVESTMENTS, INC., *Plaintiff-Appellant*, | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 15 C 4978 |
| NNR GLOBAL LOGISTICS, INC., *Defendant-Appellee*. | Charles P. Kocoras, *Judge*. |

**O R D E R**

Arendovich Investments sued NNR Global Logistics for improperly shipping a container of copper from China to the United States. The district court granted judgment in favor of Arendovich but limited its recovery to statutory damages under the Carriage of Goods by Sea Act. Rather than file a notice of appeal, Arendovich filed an untimely post-judgment motion for relief, which the court denied. Because Arendovich did not meet its burden to warrant post-judgment relief, we affirm the judgment of the district court.

Arendovich, an Illinois corporation located in Decatur, paid $98,600 to Dalian Ding Ding Import Export Corporation, a Chinese business, for copper that it intended to resell to a third party for $135,285. Arendovich then contracted with NNR, also an Illinois corporation, to be its logistical broker, and granted NNR a customs power of attorney. Under the contract, NNR was supposed to "arrange for the safe carriage by others of the copper from China to the office of the plaintiff … and to provide for insurance against all losses of the plaintiff."

Xenon Arendovich, an agent of Arendovich Investments, traveled to China and observed the copper being loaded into a container for transport to a load port in Tianjin. Once the copper was loaded into the container, the container door was sealed. The container did not ship to the sea port until nearly two weeks later, at which time NNR accepted the container. Upon acceptance, NNR issued a bill of lading. The container was then transported by ship to Canada, by rail to Harvey, Illinois, and finally by truck to Decatur. When the container arrived at Decatur, however, Xenon noticed that the seal on the container was different from what he recalled seeing in China. The container had been opened, and instead of copper it contained cement bricks.

Arendovich then sued NNR in state court for breach of contract for failing to ship the copper and failing to obtain insurance. The case was removed to federal court pursuant to 49 U.S.C. § 14706(d) and 28 U.S.C. § 1441(a), (c).

NNR moved for summary judgment, arguing that the action could be brought only under the Carriage of Goods by Sea Act, 46 U.S.C. § 30701 ("COGSA"), which applies to "[e]very bill of lading or similar document of title which is evidence of a contract for the carriage of goods by sea to or from ports of the United States." The COGSA governed Arendovich's claims, NNR contended, because it had issued a bill of lading that indicated that the copper was to be transported by sea. But Arendovich failed to establish a prima facie case of liability under the Act because it could not show that the copper remained in the container between the time that the container had been sealed and when NNR received it at the sea port. But even if Arendovich could establish NNR's liability, NNR continued, Arendovich's recovery would be capped at $8000 because the COGSA limits a carrier's liability to $500 per package. 46 U.S.C. § 30701, Sec. 4(5). Arendovich had contracted with NNR to ship sixteen "packages" of copper.

Arendovich opposed NNR's motion for summary judgment, arguing that the COGSA did not govern this case. The Act applied only to carriers, Arendovich urged, and NNR acted merely as a broker; it did not physically carry or ship the cargo itself.

The court entered judgment in favor of Arendovich, but it was a Pyrrhic victory. Although the court found that Arendovich had "successfully stated a claim under COGSA" (as reflected by the bill of lading that the company had entered into with NNR), the COGSA limited NNR's liability to $8000. The court entered judgment for Arendovich in that amount.

Arendovich did not immediately appeal and instead, thirty days later, filed a motion for the court to reconsider its summary judgment order. Arendovich asserted that the court "applied an incorrect standard of law or misapprehended the contents of the record." The COGSA did not apply, Arendovich maintained, because NNR was just a broker and not a "shipper." But even if the COGSA applied, Arendovich continued, the damages should not be limited to $500 per package because NNR breached its duty to declare the value of the copper shipment. Finally, Arendovich argued that NNR failed to obtain insurance for the copper shipment, as called for in their agreement.

In response, NNR argued that a motion to reconsider did not exist under the Federal Rules of Civil Procedure, and that any motion under Federal Rule of Civil Procedure 59(e) was untimely because Arendovich filed it more than 28 days after the entry of judgment. *See* FED. R. CIV. P. 59(e).

The district court denied Arendovich's motion, finding that it had not met its burden of establishing that post-judgment relief was warranted. The court agreed with NNR that Arendovich's motion, which appeared to seek relief under Rule 59(e), was filed too late. But if the motion were treated as arising under Rule 60(b), it must be denied because it did not allege that the summary judgment order was entered as a result of excusable neglect, nor did it identify newly discovered evidence that was not available at an earlier stage in the litigation.

Arendovich appealed. But because it filed its appeal more than thirty days after summary judgment, *see* FED. R. APP. P. 4(a)(1), this court limited the appeal to review of the denial of Arendovich's Rule 60(b) motion.

Arendovich argues that the district court abused its discretion by not awarding post-judgment relief under Rule 60. We disagree. Contrary to Arendovich's contention, Rule 60(b)(1) examines excusable neglect that *led* to the judgment; not excusable neglect that occurred *after* the judgment. *See, e.g., Lowe v. McGraw-Hill Cos.*, 361 F.3d 335, 341–43 (7th Cir. 2004). Rule 60(b)(2) allows for relief in the case of newly discovered evidence, but Arendovich does not even hint that it is entitled to relief on this basis. Nor did Arendovich's motion specify that it deserved relief from judgment under Rule 60(b)(6) because of extraordinary circumstances. The district court appropriately denied Arendovich any post-judgment relief.

To the extent Arendovich asserts that the district court applied an incorrect standard of law or misapprehended the record, such an argument may be suitable for direct appeal, but is not so in a Rule 60(b) motion. "Rule 60 relief is limited to extraordinary situations where a judgment is the inadvertent product of special circumstances and not merely the erroneous application of law." *Kennedy v. Schneider Elec.*, 893 F.3d 414, 419 (7th Cir. 2018) (citation and internal quotations omitted).

Arendovich finally argues that the district court erred in denying its request to respond to NNR's argument that the post-judgment motion was untimely. This argument is frivolous. Rule 59(e) requires that "a motion to alter or amend a judgment … be filed no later than 28 days after the entry of the judgment." That 28-day deadline may not be extended. FED. R. CIV. P. 6(b)(2); *Banks v. Chi. Bd. of Educ.*, 750 F.3d 663, 666 (7th Cir. 2014).

AFFIRMED