In the

# United States Court of Appeals
### For the Seventh Circuit

Nos. 02-4296 & 03-1021

MARK A. NISENBAUM,

*Plaintiff-Appellant,*
*Cross-Appellee,*

*v.*

MILWAUKEE COUNTY, *et al.*,

*Defendants-Appellees,*
*Cross-Appellants.*

Appeals from the United States District Court
for the Eastern District of Wisconsin.
No. 99-C-1232—**Patricia J. Gorence**, *Magistrate Judge.*

ARGUED JUNE 2, 2003—DECIDED JUNE 25, 2003

Before POSNER, EASTERBROOK, and WILLIAMS, *Circuit Judges.*

EASTERBROOK, *Circuit Judge.* At the end of 1998, Mark Nisenbaum lost his job as a security supervisor at Milwaukee County's Department of Public Works. Invoking 42 U.S.C. §1983, he sued everyone in sight: the County, the County Executive (F. Thomas Ament), the Department's Director of Facilities Management (Daryl Bzdawka) and his deputy (Lawrence Lauer), its Human Resources Manager (Doris Harmon), and his immediate supervisor (Cortez VanFelder). According to Nisenbaum, he

was sacked because he ran for public office (County Clerk) in the fall of 1998. He contends that the discharge violated his rights under the Constitution's first amendment, applied to the states and their subdivisions through the fourteenth amendment. All parties agreed that a magistrate judge could preside. See 28 U.S.C. §636(c). She granted summary judgment in favor of each defendant other than Bzdawka, who prevailed at a jury trial. We must resolve cross-appeals: Nisenbaum contends that the court should hold a second trial at which Lauer, Harmon, and VanFelder would be defendants; defendants contend that Nisenbaum's claims against them are frivolous and his manner of prosecuting the case vexatious, so that they are entitled to sanctions.

Nisenbaum's job was to superintend security at the Milwaukee County Courthouse complex. After the County directed the Department of Public Works to provide security at additional facilities, increase the size of the security staff at each, and make greater use of computers in providing for security, Bzdawka decided that this would be best handled if Nisenbaum's position were replaced with a "security coordinator" having more responsibilities, better qualifications, and a higher salary. In June 1998 Bzdawka prepared a budget that replaced Nisenbaum's slot with a new position dubbed "security coordinator." Under the County's policies, Nisenbaum would be entitled to apply for that job but could get it only if he prevailed in an open competition. The County Executive transmitted the budget to the County Board, which enacted it. A month or two after Bzdawka wrote out his budget request, Nisenbaum entered the race for County Clerk. He lost; his job was abolished on schedule; and he did not apply for the new coordinator position, so he was laid off. The County's Department of Human Resources prepared a list of people eligible for the new position. Local law required the Department of Public

Works to choose someone from that list, which did not include Nisenbaum. He does not contend that the Department of Human Resources omitted him from the list for an improper reason; since he did not apply, no such argument would be tenable. It might be possible, if barely, to say that Bzdawka disapproved of his campaign and on that account discouraged him from applying for the coordinator position—though this would be a stretch, as the Department of Human Resources had a free hand to make its own list. At all events, it is not possible to see how any of the other defendants could be liable for the fact that Nisenbaum was not on the list and thus was ineligible for the new position.

What Nisenbaum says on appeal is that in fall 1998 Lauer, Harmon, and VanFelder knew that he was running for office (as they concede) and that a jury could infer that they also knew his platform (honesty and hard work in the County Clerk's office). But what difference could that knowledge have made? By the time they learned of Nisenbaum's candidacy, the die had been cast. They had nothing to do with the County Board's decision to eliminate his slot or with the fact that he was not on the list for the coordinator's position. It is not enough for a plaintiff to show that a given defendant knows of protected speech; the plaintiff also must show that the speech, and the defendant in question, played a causal role in the adverse decision. See *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274 (1977); *Vukadinovich v. North Newton School Corp.*, 278 F.3d 693, 699 (7th Cir. 2002). Nisenbaum did not establish any material dispute about these defendants' role in the causal chain: they had none. Indeed, it is hard to see why even Bzdawka should have been put through a trial. His budget had been prepared at least a month before Nisenbaum threw his hat into the ring—and Nisenbaum does not contend that he had told Bzdawka (or anyone else) before July

that he was going to run. At oral argument, Nisenbaum's lawyer said that he had run for office twice before. That he had remained on the payroll makes it even harder to perceive any connection between the third candidacy and the end of his job. It is not as if his platform the third time around were controversial—who is against honesty and hard work? A campaign might imply that "the incumbent" must be the opponent of good government, but Nisenbaum did not work in the Clerk's office, so his candidacy did not implicitly criticize Bzdawka or his superiors in the bureaucratic hierarchy.

Perhaps one could say that even in June 1998, when preparing his budget, Bzdawka was out to get rid of Nisenbaum. But it would not be possible to think that the reason was a political campaign that lay in the future. Time's arrow points in one direction; the reason had to be some event preceding the budget's preparation. It is not hard to perceive one. During 1997 Nisenbaum submitted a forged document that enabled him to take seven weeks' paid leave under the workers' compensation program, even though he was fit to work. He was caught and fired. The County's civil service authority converted the discharge to a lengthy, unpaid suspension. Bzdawka, Lauer, and VanFelder soured on Nisenbaum and had testy relations with him thereafter. Maybe the impetus for the reorganization of 1998 was to get rid of someone who had lost his superiors' confidence. But that view of matters would not entitle Nisenbaum to relief under §1983, which does not create remedies for the evasion of local civil-service systems. Proof that the ostensible reason for the reorganization was not the real one does *not* imply that the real reason was forbidden by federal law. See *Visser v. Packer Engineering Associates, Inc.*, 924 F.2d 655, 657 (7th Cir. 1991) (en banc). No reasonable jury could find that the real reason for a decision taken in June was a political campaign launched in August.

Thus we arrive at the cross-appeal, by which defendants seek sanctions for frivolous litigation. Potential bases of that relief include 42 U.S.C. §1988, which allows prevailing defendants to recover attorneys' fees if the litigation was frivolous, see *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412 (1978); Fed. R. Civ. P. 11(c), which authorizes sanctions for complaints filed without reasonable investigation; Fed. R. Civ. P. 37, which authorizes sanctions for misconduct in discovery; and 28 U.S.C. §1927, which permits courts to penalize an attorney "who . . . multiplies the proceedings in any case unreasonably and vexatiously". Defendants have invoked all of these, and with considerable justification.

Take, for example, the claim against Milwaukee County. A unit of municipal government may be held liable under §1983 only for its own policies, not for the improper acts of its agents and employees. See *Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). Nisenbaum did not allege, and has never argued, that Milwaukee County has a policy of eliminating civil-service employees who run for office. What is more, if the County *did* have such a policy, it would be entirely lawful. See *Broadrick v. Oklahoma*, 413 U.S. 601 (1973) ("baby Hatch Acts" forbidding civil-service employees to engage in politics are valid); *Clements v. Fashing*, 457 U.S. 957 (1982) (states may require employees to resign in order to run for a different position). A municipality with a local version of the Hatch Act or a resign-to-run policy must implement that rule evenhandedly; it may not require Democrats to resign while allowing Republicans to keep their civil-service positions as fallbacks. But Nisenbaum, having omitted any allegation that Milwaukee County acted pursuant to any policy, necessarily failed to allege that the County engages in viewpoint discrimination as a matter of policy. The claim against the County thus has been frivolous from the get-go, sanctionable under Rule 11(c) and a warrant for fee-shifting under §1988.

Party-initiated sanctions under Rule 11 depend on the filing of a motion under Rule 11(c)(1)(A). This motion must be served, but it may not be filed with the court until the opposing party has had three weeks to decide whether to withdraw the supposedly offending pleading. Only if the adverse party maintains its position may the movant inform the court and request sanctions. When denying the motion under Rule 11, the magistrate judge stated that defendants had failed to comply with Rule 11(c)(1)(A). In a footnote, however, the magistrate judge revealed that any noncompliance was technical: the defendants sent Nisenbaum's lawyer a "letter" or "demand" rather than a "motion." Before turning to the court, defendants alerted Nisenbaum to the problem and gave him more than 21 days to desist; he decided to press on. Defendants have complied substantially with Rule 11(c)(1)(A) and are entitled to a decision on the merits of their request for sanctions under Rule 11.

Nisenbaum's claim against Ament, the County Executive, is no stronger than his claim against the County. *Monell* does not protect Ament, but the doctrine of legislative immunity does. Ament's only role was transmitting a budget from the Department of Public Works to the County Board. The Board enacted the budget that eliminated Nisenbaum's position. *Bogan v. Scott-Harris*, 523 U.S. 44 (1998), holds that state and local officials may not be mulcted under §1983 on account of introducing, voting for, or signing legislation. Ament asked to be dismissed on the authority of *Bogan*; Nisenbaum ignored the subject (as he has disdained to discuss *Bogan* in his appellate briefs) and contended that Ament should remain a party on the off-chance that he knew of Bzdawka's supposed antipathy to his run for office. An off-chance does not satisfy Rule 11 (investigation must precede litigation); but even if Ament knew about Nisenbaum's politics and opposed his political stance, Ament still would

be immune from damages liability. Burying one's head in the sand, in the hope that a judge will disregard an adverse decision by the Supreme Court, is a paradigm of frivolous litigation. See *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073 (7th Cir. 1987). If Nisenbaum had an answer to *Bogan* he needed to offer it; courts do not penalize litigants who try to distinguish adverse precedents, argue for the modification of existing law, or preserve positions for presentation to the Supreme Court. Nisenbaum, however, did none of these things.

As for Lauer, Harmon, and VanFelder: Nisenbaum knew before launching this suit that the budget had been prepared before anyone learned of his campaign. He (or his lawyer) had to know that his absence from the list compiled by the Department of Human Resources precluded Lauer, Harmon, VanFelder, and anyone else at the Department of Public Works from hiring him as the new security coordinator. These facts render frivolous the claims against these three persons, who were outside the causal chain—as Nisenbaum conceded at his own deposition. When asked why he had sued these persons, Nisenbaum revealed that he had done so simply because of their positions in the bureaucracy.

> Q: What role do you believe Doris Harmon played in retaliating against you?
>
> A: Doris Harmon is part of the policy-making— or decision-making on grievances, on disciplinary actions.
>
> . . .
>
> Q: What specific involvement did she have with your employment decisions that led you to believe she wanted to retaliate against you?
>
> A: My job was abolished.
>
> Q: Okay.

A:  My job was abolished. Her name's on some of the documentation signing me off, you're out of a job.

. . .

Q:  What decisions do you think she made?

A:  Not having the paperwork in front of me, whatever the forms, you know, that had to go through to have the job abolished.

. . .

Q:  Well, can you describe for me what role Doris Harmon played?

A:  I don't recall.

Q:  Can you describe for me the role Cortez VanFelder played in the decision to abolish your job?

A:  I don't recall what his role was.

Q:  Can you describe for me the role Larry Lauer played in deciding to abolish your job?

A:  I don't recall.

This "inability to recall" is striking, given that Nisenbaum had attended all of the defendants' depositions, in which their roles were covered in detail. It amounts to a confession that the suit never had a factual basis. Pressing a claim even after its emptiness became pellucid must be described as vexatious.

Bzdawka prevailed at trial, and the magistrate judge's decision that a trial was essential precludes any shifting of trial costs back to Nisenbaum. It was the magistrate judge's decision, and not Nisenbaum's alone, that required Bzdawka to bear the attorneys' fees for those proceedings that followed the denial of his motion for summary

judgment. Still, Bzdawka may be entitled to recover some or all of the attorneys' fees incurred in discovery, which proceeded very oddly. Here's an example: When asked why he was sure that his campaign was the reason for the abolition of his job, Nisenbaum said that he knew this because there could have been no other possible reason. Nisenbaum described himself as a sterling employee who, until launching his campaign in August 1998, had been universally praised and enjoyed a blemish-free record. Defendants then brought up Nisenbaum's 1997 discharge for fraud (later converted to a suspension without pay) and a trail of disciplinary actions for other infractions. At this point, his client having been caught in a lie, Nisenbaum's lawyer "withdrew" his answers on the subject and undertook not to make Nisenbaum's employment history an issue in the case. Then, when responding to defendants' motion for summary judgment, Nisenbaum proclaimed that a trial was essential because the record did not contain any evidence that other reasons, such as disciplinary problems, might justify abolition of the job. Indeed, the record had no such evidence, but not for the reason implied by the position Nisenbaum took.

Another issue that Bzdawka and the other defendants sought to explore in discovery was Nisenbaum's criminal record. It would not do to have a security coordinator with a felony conviction—and although belated discovery of a criminal record would not absolve Bzdawka of all liability for a wrongfully motivated discharge, it would stop the accrual of damages. See *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352 (1995). In a form that Nisenbaum completed while still employed, he answered "no" to the question whether he had "ever been convicted of any violation of the law or [had] any pending criminal charges other than minor traffic violations." That statement was false: Nisenbaum has been convicted of theft by fraud and of fraudulent use of an identification card to

obtain a parking pass reserved for persons with disabilities. The latter charge was pending at the time he checked the "no" box on the form. When this subject was broached in discovery, Nisenbaum first denied that he had a criminal record, then falsely stated that the convictions had been expunged, and finally denied knowing what the word "conviction" means and thus, he asserted, was unable to answer the questions. No litigant is entitled to balk the defendants' efforts at discovery in this fashion without paying a price. Civil sanctions are a minimum; criminal prosecution for perjury is another option (though initiation is reserved to a different branch of government).

One more example suffices. Defendants served a contentions interrogatory asking Nisenbaum what evidence he had that each of the defendants retaliated against his speech. In answer to this request for pointers to the record, Nisenbaum replied: "See document production in response to requests 1 and 2." We have examined these documents; they have nothing to do with the subject. When defendants persisted, Nisenbaum "supplemented" this answer by reprinting, verbatim, the factual averments of his complaint. Allegations in a complaint are not evidence. Defense counsel again protested. Nisenbaum supplemented his answer a second time, referring generally to depositions but not including any record references. This left defendants adrift and made much of the discovery process pointless from their perspective—though it remained expensive.

Motions for sanctions under Rules 11 and 37, and requests for awards of fees under §§ 1927 and 1988, are addressed to the sound judgment of the district court. Appellate review is correspondingly deferential. See, e.g., *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 399-405 (1990); *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928 (7th Cir. 1989) (en banc). But a court of appeals can defer only to decisions actually taken and explained. The

magistrate judge committed a legal error in declining to consider defendants' request under Rule 11, and when opining that the suit was not frivolous for purposes of other rules and statutes she did not discuss any of the obstacles (such as *Monell*, *Bogan*, and the impracticality of time travel) that render bootless the claims against everyone other than Bzdawka. The magistrate judge did allude to Nisenbaum's misconduct during discovery but did not analyze it in any detail. A serious request for sanctions is entitled to more than a brushoff. It is open to fair debate how the judiciary should respond to the discovery abuse that took place. Which particular legal expenses can be chalked up to Nisenbaum's misconduct? But for five of the six defendants (those sued with no legal or factual basis) the entitlement to attorneys' fees is clear, and for Bzdawka only the amount of the sanction is seriously debatable. The district court must conduct a hearing to explore these issues further and make appropriate orders with respect to sanctions and attorneys' fees under §1988. Defendants have asked for sanctions on appeal as well, but, as both §1988 and Rule 37 establish fee-shifting regimens, an award is automatic. See *Commissioner of INS v. Jean*, 496 U.S. 154 (1990); *Rickels v. South Bend*, 33 F.3d 785 (7th Cir. 1994). The district court should take up this issue as part of the proceedings on remand.

Finally, there is the matter of costs. Prevailing parties recover costs as of course. Fed. R. Civ. P. 54(d)(1). Yet the final judgment requires both sides to bear their own costs. The magistrate judge did not explain why she was departing from the norm under Rule 54, and we cannot imagine any reason why the victims of unfounded litigation should be out of pocket the costs listed in 28 U.S.C. §1920. Nisenbaum attempts to defend this aspect of the disposition by observing that defendants did not file appropriate bills of costs. Well, of course they didn't; before the time came for filing, the judge stated that costs

would not be allowed. Nisenbaum also contends that the district court could have ordered the defendants to bear their own costs as a sanction for making "punitive" motions. He does not identify which motions he has in mind. When awarding costs, the magistrate judge may exclude any that the defendants incurred in filing pointless and unfounded motions; these are self-inflicted wounds. That the defendants may have filed lots of motions may show nothing more than that Nisenbaum persisted too long in this unwarranted litigation, however, and that is a reason why Nisenbaum rather than the defendants should cover the §1920 costs.

Defendants also recover their costs in this court, but in light of our rulings with respect to attorneys' fees and sanctions we deny the defendants' request for double costs.

The judgment on the merits is affirmed on Nisenbaum's appeal. The judgment with respect to costs, attorneys' fees, and sanctions is vacated on defendants' appeal, and the case is remanded for further proceedings consistent with this opinion.

A true Copy:

       Teste:

                             _____

                             *Clerk of the United States Court of*
                                    *Appeals for the Seventh Circuit*