In the

# United States Court of Appeals

### For the Seventh Circuit

_____

No. 15-2142

NORTHERN ILLINOIS TELECOM, INC.,

*Plaintiff,*

and

ROBERT G. RIFFNER,

*Respondent-Appellant,*

*v.*

PNC BANK, N.A.,

*Defendant-Appellee.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 1:12-cv-02372 — **John Robert Blakey**, *Judge.*

_____

ARGUED JANUARY 18, 2017 — DECIDED MAY 10, 2017

_____

Before WOOD, *Chief Judge*, and POSNER and HAMILTON, *Circuit Judges.*

HAMILTON, *Circuit Judge*. This appeal pivots on the procedural requirements of Federal Rule of Civil Procedure 11 for seeking sanctions against a party and its attorney for asserting

a frivolous claim or defense. Rule 11(c)(2) requires a party seeking Rule 11 sanctions first to serve a proposed motion on the opposing party and to give that party at least 21 days to withdraw or correct the offending matter. Only after that time has passed may the motion be filed with the court. To mix naval metaphors, the party seeking sanctions must first fire a warning shot that gives the opponent time to find a safe harbor.

In this case, the party who sought sanctions failed to comply with that procedure. It argued, however, that two letters it sent containing both settlement demands and threats to seek Rule 11 sanctions if its demands were not met amounted to "substantial compliance" with Rule 11(c)(2) and thus preserved its right to move for sanctions after the district court granted summary judgment in its favor. The district court accepted that argument and imposed sanctions. *Northern Illinois Telecom, Inc. v. PNC Bank, NA* (*NITEL II*), No. 12 C 2372, 2015 WL 1943271, at *9 (N.D. Ill. Apr. 29, 2015).

We reverse. Whether "substantial compliance" with the warning-shot/safe-harbor requirement of Rule 11(c)(2) can ever be sufficient is controversial. We are the lone circuit to say yes. Compare *Penn, LLC v. Prosper Business Dev. Corp.*, 773 F.3d 764, 768 (6th Cir. 2014) (eight circuits reject substantial compliance theory), with *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003) (substantial compliance with warning-shot requirement was sufficient to allow sanctions). Even assuming substantial compliance is sufficient, the defendant's settlement demands in this case fell far short of substantial compliance. We therefore reverse the district court's award of sanctions.

I.  *Factual and Procedural Background*

  A.  *Plaintiff's Breach of Contract Claim*

In 2007, a company called Nexxtworks contracted with two banks in the Chicago area to upgrade communications facilities. *Northern Illinois Telecom, Inc. v. PNC Bank, NA* (*NITEL I*), No. 12 C 2372, 2014 WL 4244069 (N.D. Ill. Aug. 27, 2014). Nexxtworks subcontracted with plaintiff NITEL to install data and telephone cable at four bank branches. NITEL performed the work, but Nexxtworks did not pay NITEL all that it thought it was owed. Nexxtworks asserted there had been quality problems that had required it to hire other subcontractors to redo or finish NITEL's work. In 2009, before their dispute was resolved, Nexxtworks filed for bankruptcy protection in Florida and listed NITEL's claim as a disputed debt. NITEL filed a proof of claim for $115,000, but the bankruptcy court disallowed it because it was filed too late.

In 2012, still seeking payment for what it thought it was owed, NITEL filed this breach of contract suit in an Illinois state court against PNC Bank, which by that time had acquired both of the original banks in whose branches NITEL had installed the cables. NITEL sought damages of $81,300, plus late fees, attorney fees, and costs. With the amount in controversy greater than $75,000, PNC Bank removed the case to federal court based on diversity of citizenship under 28 U.S.C. § 1332. The problem for NITEL was that it had no contract with PNC Bank, which moved for summary judgment on that basis. District Judge St. Eve granted summary judgment for PNC Bank. *NITEL I*, 2014 WL 4244069. NITEL did not appeal.

B.  *District Court Rule 11 Sanctions Order and Award*

The present appeal stems from the district court's post-judgment award of Rule 11 sanctions against both NITEL and its lawyer, appellant Riffner. Before discovery began and again before PNC Bank moved for summary judgment, PNC Bank's lawyer sent letters to Riffner asserting that NITEL's breach of contract claim was frivolous. Both letters proposed to settle the case by having NITEL dismiss its suit and pay PNC Bank its attorney fees. Both letters concluded by threatening to seek Rule 11 sanctions if NITEL did not agree to the demands within a few days. Riffner did not respond to those letters. Two months after final judgment, PNC Bank moved for sanctions under Rule 11. The case was reassigned to District Judge Blakey.

Judge Blakey awarded sanctions against NITEL and Riffner, jointly and severally, for $84,325. The judge held that the contract claim was frivolous and asserted in bad faith. The court found "clear evidence that, in fact, NITEL knew Nexxtworks (and not PNC) was contractually obligated to pay for the work NITEL did at the branches, and even a cursory investigation would have shown that the Nexxtworks email and the work orders could not support a breach of contract claim." NITEL and Riffner both appealed the sanctions order, but NITEL was later dismissed as an appellant. We have before us only Riffner's appeal.

II.  *Analysis*

We review a district court's grant of Rule 11 sanctions for abuse of discretion. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 409 (1990); *Mars Steel Corp. v. Continental Bank, N.A.*, 880 F.2d 928, 933 (7th Cir. 1989) (en banc). An abuse of discretion

may be established if the district court based its decision on an erroneous view of the law or a clearly erroneous evaluation of evidence. *Gastineau v. Wright*, 592 F.3d 747, 748 (7th Cir. 2010).

Riffner raises both substantive and procedural objections to the district court's award of sanctions. The substantive arguments are not persuasive, and Riffner's attempt to walk away from his and NITEL's earlier reliance on work orders to prove it had contracts with the banks is flatly contradicted by the record.[1] The district court did not abuse its discretion in finding that the breach of contract claim that Riffner pursued against PNC Bank on behalf of NITEL was objectively baseless because NITEL never had a contract with PNC Bank.

The problem with the sanctions award is procedural. PNC Bank simply failed to follow the requirements of Rule 11. To explain, we start with a word about the role of Rule 11 in federal civil litigation and then examine the amendments that led to the warning-shot/safe-harbor requirement.

In civil cases within our jurisdiction, federal courts exercise considerable discretion and great power. The proper exercise of that power can be essential in preserving the rule of law and the rights and liberties of the American people, in cases large and small, landmark and mundane. When a plaintiff invokes those powers in a civil case, it puts machinery in gear that can be powerful, intimidating, and often expensive.

---

[1] In its response to PNC Bank's motion for summary judgment, NITEL, through Riffner, said: "NITEL's allegations against MidAmerica and National City are based on purported work orders for each of the Branches," and that "the Work Order acted as a contract for the work done."

Those powers and machinery can be abused by litigants. Federal Rule of Civil Procedure 11 seeks to ensure that those powers and machinery are engaged only to address claims and defenses that have a reasonable basis in fact and law and that are asserted only for a proper purpose. Because Rule 11 can affect so powerfully the ability of parties to seek the protection of the federal courts, the details of its provisions have long been controversial.

In the current version of the rule, the substantive provisions are in subsection (b):

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper—whether by signing, filing, submitting, or later advocating it—an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions are warranted by existing law or by a non-frivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
> (3) the factual contentions have evidentiary support or, if specifically so identified, will likely

have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Subsection (c) then authorizes district courts to impose sanctions, including monetary sanctions, against parties, attorneys, and law firms who violate the substantive standards of subsection (b), as Riffner and NITEL did in this case. Subsection (c) provides:

(c) Sanctions.

(1) *In General.* If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

(2) *Motion for Sanctions.* A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). *The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the*

*court sets.* If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.

(3) *On the Court's Initiative.* On its own, the court may order an attorney, law firm, or party to show cause why conduct specifically described in the order has not violated Rule 11(b).

(4) *Nature of a Sanction.* A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

(5) *Limitations on Monetary Sanctions.* The court must not impose a monetary sanction:

(A) against a represented party for violating Rule 11(b)(2); or

(B) on its own, unless it issued the show-cause order under Rule 11(c)(3) before voluntary dismissal or settlement of the claims made by or against the party that is, or whose attorneys are, to be sanctioned.

(6) *Requirements for an Order.* An order imposing a sanction must describe the sanctioned conduct and explain the basis for the sanction.

Our focus here is on the procedural requirements in Rule 11(c)(2) for a party's motion for sanctions. Before filing a motion for sanctions, a party must first serve the motion on the challenged party, and the motion may not be filed with the court for 21 days. That gives the challenged party that time to withdraw or correct the challenged claim, defense, contention, or denial. This combination of a warning shot and a safe harbor was a critical change adopted in the 1993 amendments to Rule 11. A little history explains its importance.

As adopted in the original Federal Rules of Civil Procedure in 1938, Rule 11 required attorneys to sign all pleadings and treated the signature as a certificate that the lawyer had read the pleading and that, to the best of the lawyer's knowledge, information, and belief, there was good ground to support it and it was not interposed for delay. While the rule authorized sanctions, it did so in only this vague language: "For a wilful violation of this rule an attorney may be subjected to appropriate disciplinary action." Fed. R. Civ. P. 11 (1938), as promulgated at 308 U.S. 645, 676 (1938). The focus on the attorney's subjective knowledge and the requirement of willful violation meant that sanctions were very rare before the rule was amended in 1983. Georgene M. Vairo, *Rule 11: A Critical Analysis*, 118 F.R.D. 189, 190–92, 205 (1988).

Growing impatience with lawsuits and litigation tactics perceived as frivolous led to the most controversial amendment to the Federal Rules of Civil Procedure since their adoption, the 1983 amendment to Rule 11. *Id.* at 190. The principal changes were to adopt an objective standard of reasonableness, to impose on counsel a pre-filing duty of inquiry, and to add language that the court "shall impose" sanctions when the rule was violated. Fed. R. Civ. P. 11 advisory committee's

note to 1983 amendment. The amendment left no room for an "empty head, pure heart" defense.

The newly amended Rule 11 quickly became a favorite weapon in litigators' briefcases, often used and even more often brandished to threaten. Its use exploded in the late 1980s. One commentator wrote in 1988 that Rule 11 had become "the cottage industry of the litigation bar." Vairo, 118 F.R.D. at 199. As it turned out, the 1983 amendments had been an over-correction. The new problems led to the 1993 amendments at the heart of this appeal.[2] One unintended consequence of the threat of Rule 11 sanctions was that "parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation." Fed. R. Civ. P. 11 advisory committee's note to 1993 amendment.[3]

---

[2] For detailed accounts of the problems encountered after the 1983 amendments, see the following sources cited by the Advisory Committee in 1993: New York State Bar Committee on Federal Courts, *Sanctions and Attorneys' Fees* (1987); Thomas Willging, *The Rule 11 Sanctioning Process* (1989); American Judicature Society, *Report of the Third Circuit Task Force on Federal Rule of Civil Procedure 11* (Stephen Burbank ed., 1989); Elizabeth Wiggins et al., Federal Judicial Center, *Report on Rule 11* (1991). The 1993 committee also cited three book-length analyses of the case law: Gregory Joseph, *Sanctions: The Federal Law of Litigation Abuse* (1989); Jerold Solovy, *The Federal Law of Sanctions* (1991); Georgene Vairo, *Rule 11 Sanctions: Case Law, Perspectives and Preventive Measures* (1991). A recent search of Westlaw showed that Rule 11 was cited in only five appellate decisions in 1978, but in 236 appellate decisions in 1988. For district courts, the comparable figures are 19 in 1978 and 615 in 1988.

[3] For a broader review of the criticisms and process that led to adoption of the 1993 amendments, see Carl Tobias, *The 1993 Revision to Federal Rule 11*, 70 Ind. L.J. 171, 174–88 (1994)

The 1993 amendments preserved the objective standard of reasonableness and the enhanced duty of pre-filing inquiry into the law and facts. The amendments sought, however, to constrain the imposition of sanctions and to "reduce the number of motions for sanctions presented to the court." *Id.* The 1993 amendments were numerous. They included new procedural requirements to enhance due process and fair use of the rule, and they removed the "shall impose" language to restore trial judges' discretion in deciding whether to impose sanctions at all.

One of the most important changes was to add the provision at issue in this appeal, the warning-shot/safe-harbor procedure in Rule 11(c)(2). The Advisory Committee explained:

> The rule provides that requests for sanctions must be made as a separate motion, *i.e.*, not simply included as an additional prayer for relief contained in another motion. The motion for sanctions is not, however, to be filed until at least 21 days (or such other period as the court may set) after being served. If, during this period, the alleged violation is corrected, as by withdrawing (whether formally or informally) some allegation or contention, the motion should not be filed with the court. *These provisions are intended to provide a type of "safe harbor" against motions under Rule 11 in that a party will not be subject to sanctions on the basis of another party's motion unless, after receiving the motion, it refuses to withdraw that position or to acknowledge candidly that it does not currently have evidence to support a specified allegation.* Under the former

rule, parties were sometimes reluctant to abandon a questionable contention lest that be viewed as evidence of a violation of Rule 11; under the revision, the timely withdrawal of a contention will protect a party against a motion for sanctions.

*To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the "safe harbor" period begins to run only upon service of the motion.* In most cases, however, counsel should be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion.

*Id.* (emphasis added). A letter may thus warn about impending service of the motion, but a letter is not a substitute for a motion.

To return to the case at hand, PNC Bank simply did not comply with this warning-shot/safe-harbor requirement. It did not prepare and serve a Rule 11 motion on NITEL and Riffner, nor did it allow 21 days for them to withdraw NITEL's claims. The district court concluded that PNC Bank's two settlement offers with Rule 11 threats to Riffner were sufficient warning shots under Rule 11(c)(2) on the theory that they substantially complied with the rule. *NITEL II*, 2015 WL 1943271, at *4. To support the substantial compliance approach, the court cited our decisions in *Methode Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923, 927 (7th Cir. 2004) (dicta), and *Matrix IV, Inc. v. American National Bank & Trust Co. of Chicago*, 649 F.3d 539, 552–53 (7th Cir. 2011).

Our line of cases on "substantial compliance" with the warning-shot requirement began with *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003), where we concluded that where the failure to satisfy the warning-shot requirement was only "technical," the moving party's substantial compliance with the warning-shot requirement entitled it "to a decision on the merits." In *Nisenbaum*, we held that there was substantial compliance with Rule 11 because the defendants sent a letter—rather than a motion—that explained the grounds for sanctions and provided more than 21 days to remedy the problem. Insisting on a formal motion seemed unduly formalistic.

In *Matrix IV*, the moving party similarly sent a letter that explained the grounds for the sanctions and informed the opposing party it would seek Rule 11 sanctions if the claim were not dismissed voluntarily. 649 F.3d at 552. The letter explicitly asserted that it served "as notice" of the party's intention to seek sanctions at the close of the case. We found that this warning also amounted to substantial compliance with the warning-shot requirement, though we ultimately decided the case on other grounds, finding that the sanctions were unwarranted on the merits. *Id*. at 553.

There are both legal and factual problems with this theory of "substantial compliance" to save the sanctions order in this case. The legal problem is that the substantial compliance theory we adopted in *Nisenbaum* stands alone and is difficult to reconcile with the explicit requirements of the Rule and the clear explanation from the Advisory Committee. No other circuit has adopted this approach. See *Penn, LLC v. Prosper Business Dev. Corp.*, 773 F.3d 764, 767–68 (6th Cir. 2014) (reviewing circuit split: Second, Third, Fourth, Fifth, Sixth, Eighth, Ninth,

and Tenth Circuits have rejected "substantial compliance," and only Seventh Circuit has adopted it). Our colleagues in other circuits have been highly critical of the terse treatment of the issue in *Nisenbaum*. E.g., *Cadle Co. v. Pratt* (*In re Pratt*), 524 F.3d 580, 587–88 (5th Cir. 2008) (*Nisenbaum* did not address language of Rule 11, Advisory Committee notes, or other Rule 11 jurisprudence); *Roth v. Green*, 466 F.3d 1179, 1193 (10th Cir. 2006) (same). As the Ninth Circuit explained in *Barber v. Miller*, "warnings were not motions" and "the Rule requires service of a motion." 146 F.3d 707, 710 (9th Cir. 1998). The 1993 amendment "deliberately imposed" the requirement of service. *Id*. "It would therefore wrench both the language and purpose of the amendment to the Rule to permit an informal warning to substitute for service of a motion." *Id*.[4]

The Advisory Committee notes warn against treating anything less than formal service of a motion as sufficient to comply with the warning-shot/safe-harbor requirement: "To stress the seriousness of a motion for sanctions and to define precisely the conduct claimed to violate the rule, the revision provides that the 'safe harbor' period begins to run only upon service of the motion. In most cases, however, counsel should

---

[4] Accord, *Star Mark Management, Inc. v. Koon Chun Hing Kee Soy & Sauce Factory, LTD*, 682 F.3d 170, 175–76 (2d Cir. 2012) (warning letter not sufficient; rule requires service of motion to trigger safe-harbor provision); *Ettinger & Assocs., LLC v. Miller* (*In re Miller*), 730 F.3d 198, 204 (3d Cir. 2013) (emphasizing importance of the safe-harbor provision in analogous bankruptcy context); *Brickwood Contractors, Inc. v. Datanet Engineering, Inc.*, 369 F.3d 385, 389 (4th Cir. 2004) (Rule 11 "thus establishes conditions precedent to the imposition of sanctions under the rule. If those conditions are not satisfied, the Rule 11 motion for sanctions may not be filed with the district court."); *Gordon v. Unifund CCR Partners*, 345 F.3d 1028, 1030 (8th Cir. 2003) (same).

be expected to give informal notice to the other party, whether in person or by a telephone call or letter, of a potential violation before proceeding to prepare and serve a Rule 11 motion." By treating a mere warning letter as sufficient, a standard of substantial compliance leaves the recipient unclear as to both whether the opposing party is serious and when the 21-day safe-harbor clock starts to run.

Despite the criticism, though, *Nisenbaum* remains controlling circuit law on this point. We need not revisit here whether substantial compliance can ever satisfy the warning-shot requirement of Rule 11(c)(2). PNC Bank's warning-shot letters fell far short of even the generous target of substantial compliance.[5]

On July 31, 2012, before discovery began, PNC Bank's lawyer sent a letter to Riffner offering to settle the case. The letter explained the defects in the breach of contract claim. We assume the explanation of those defects was sufficient. The problems in terms of substantial compliance were that the letter demanded dismissal of the suit within eight days, as well as payment to PNC Bank of $9,195 for its fees and costs. The letter also demanded within five days a written response agreeing to the demand. The letter concluded: "If I do not receive written confirmation by that date, please be advised that PNC will be seeking sanctions under Federal Rule 11 against NITEL and your firm … ."

---

[5] It should not be difficult for a party who is serious about seeking Rule 11 sanctions to comply with Rule 11(c)(2). Parties and district courts that rely on a theory of substantial compliance should understand that, at least in the present landscape, they are inviting possible *en banc* and/or Supreme Court review of the question.

On April 2, 2013, shortly after the close of discovery and before moving for summary judgment, PNC Bank's lawyer sent a second settlement offer. It again reviewed the serious problems with NITEL's case and explained why the suit was frivolous. This letter proposed different settlement terms, demanding that NITEL dismiss the complaint with prejudice and pay PNC Bank $24,000. The letter demanded written acceptance within six days. The settlement proposal concluded much as the earlier letter had: "If I do not receive written confirmation by that date, please be advised that PNC will seek sanctions under Federal Rule 11 against your firm and NITEL, for all fees and costs incurred by the bank in defending your client's baseless and patently false complaint."

The Rule 11 threats did not transform PNC Bank's settlement offers into communications that substantially complied with the Rule 11(c)(2) warning-shot/safe-harbor requirements. Even if we treat the criticisms of NITEL's case and litigation tactics as containing the equivalent of a Rule 11 motion, the letters simply did not offer NITEL or Riffner the 21-day safe harbor that was offered in *Nisenbaum* or *Matrix IV*. Substantial compliance requires the opportunity to withdraw or correct the challenged pleading within 21 days without imposition of sanctions. Neither PNC Bank letter offered that opportunity. PNC Bank was entitled, if it chose, to huff and puff about Rule 11 in its settlement demands for dismissal of baseless claims. But its posturing did not amount even to substantial compliance with the warning-shot/safe-harbor provision, let alone to the actual compliance that other circuits demand.

The district court's award of sanctions against Riffner is REVERSED.

POSNER, *Circuit Judge*, dissenting. Federal Rule of Civil Procedure 11(c)(2), captioned "Motion for Sanctions," provides, so far as bears on this case, that such "a motion … must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service … ." Our court has held that "substantial compliance" with the rule is sufficient. *Nisenbaum v. Milwaukee County*, 333 F.3d 804, 808 (7th Cir. 2003); *Methode Electronics, Inc. v. Adam Technologies, Inc.*, 371 F.3d 923, 927 (7th Cir. 2004); *Matrix IV, Inc. v. American National Bank & Trust Co. of Chicago*, 649 F.3d 539, 552–53 (7th Cir. 2011). And this case is a good example of substantial compliance, as the district judge found and my colleagues on this panel, enamored as they appear to be of legal technicalities, or reluctant to punish misbehaving lawyers, miss.

Lawyer Riffner, representing NITEL, filed this suit on NITEL's behalf against PNC Bank, N.A., the appellee, in February 2012. The district judge correctly deemed the suit frivolous. Riffner's irresponsible conduct of it was clearly sanctionable. PNC sent Riffner a letter in July 2012 explaining in detail the legal and factual problems with his lawsuit, demanding withdrawal of NITEL's complaint, and advising Riffner that if it wasn't withdrawn PNC would seek sanctions against him under Rule 11. This placed Riffner on notice that if his suit against PNC was indeed frivolous, as it was, he'd better withdraw it or face Rule 11 sanctions. He didn't withdraw the complaint—boorishly, he didn't even respond to the letter.

After conducting further discovery, which yielded additional evidence of the frivolousness of NITEL's suit, PNC

sent Riffner a second, similar letter in April 2013 outlining the evidence of its frivolousness in detail and threatening to file a Rule 11 motion for sanctions against him if he didn't dismiss the suit. Not only did he not dismiss the suit, or withdraw any of the charges made in it; he didn't even reply to the letter, thus repeating his earlier rudeness. Although PNC did not serve a formal Rule 11 motion on Riffner prior to filing the motion with the court, PNC's letters were the equivalent of Rule 11 motions, and gave Riffner two opportunities to abandon or at least curtail his frivolous lawsuit without having to pay sanctions. Instead he signaled by his failure to answer either letter that he was persisting in his frivolous suit—that he really was a boor.

Because PNC's letters constituted substantial compliance with Rule 11(c)(2), as permitted by the cases in this court that I cited earlier and that the majority opinion does not challenge, we should affirm the district court.